# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

**FILED**
**UNITED STATES DISTRICT COURT**
**DENVER, COLORADO**
*12:03 pm, Jan 08, 2025*
**JEFFREY P. COLWELL, CLERK**

Civil Action No. **24-CV-3605-RTG**

(To be supplied by the court)

Christopher L. Reynolds, Plaintiff

v. **Jury Trial requested: (please check one)**

_X__ Yes ___ No

Bradley Spargur of the Colorado State Patrol,

Robert Howell of the Colorado State Patrol,

Unknown "Sergeant" of the Colorado State Patrol phone #endind in 6388 ,

Clayton J Ankley Attorney representing Colorado State Patrol,

Allison Ailer Attorney representing Colorado State Patrol,

Scott Neckers Colorado State Trooper Robert  Howell's Attorney

Andrew Ringal Colorado State Trooper Bradley Spargur's Attorney

Defendant(s).

*(List each named defendant on a separate line. If you cannot fit the names of all defendants in the space provided, please write "see attached" in the space above and attach an additional sheet of paper with the full list of names. The names of the defendants listed in the above caption must be identical to those contained in Section B. Do not include addresses here.)*

# COMPLAINT

| NOTICE |
| --- |
| Federal Rule of Civil Procedure 5.2 addresses the privacy and security concerns resulting from  public access to electronic court files. Under this rule, papers filed with the court should not  contain: an individual's full social security number or full birth date; the full name of a person  known to be a minor; or a complete financial account number. A filing may include only: the  last four digits of a social security number; the year of an individual's birth; a minor's initials;  and the last four digits of a financial account number.<br><br>**Plaintiff need not send exhibits, affidavits, grievances, witness statements, or any other  materials to the Clerk's Office with this complaint.** |

## A. PLAINTIFF INFORMATION

*You must notify the court of any changes to your address where case-related papers may be served by filing a notice of change of address. Failure to keep a current address on file with the court may result in dismissal of your case.*

 Christopher Reynolds

620 Broken Spoke Road

Grand Junction, Colorado, 81504

 Phone (970)-260-2722

reynoldschris2121@gmail.com

## B. DEFENDANT(S) INFORMATION

*Please list the following information for each defendant listed in the caption of the complaint. If more space is needed, use extra paper to provide the information requested. The additional pages regarding defendants should be labeled "B. DEFENDANT(S) INFORMATION."*

Defendant 1:  (Representative for Colorado State Patrol) Clayton J. Ankley: Second Assistant Attorney General/Tort Litigation Unit/ Colorado Department of Law

1300 Broadway Street, 10th floor

Denver,Colorado 80203

Phone. (720) 508-6604

 Email: Clayton.Ankley@coag.gov


Defendant 2:  (Representative for the Colorado State Patrol) Allison Ailer: Colorado Department of Law

1300 Broadway Street, 10th floor

 Denver,Colorado 80203

 Phone# (720) -508- 6617

 Email:  Allison.Ailer@coag.gov


Defendant 3:( Colorado State Patrol Trooper) Bradley R. Spargur ( represented by Attorney "Andrew Ringel",)

 20591 highway 160 West,

Durango,Colorado, 81301

  Phone: (970)-385-1675

  Attorney Andrew Ringel Email: ringela@hallevans.com

 Attorney address: Andrew Ringel

1001 17th Street Suite 300

 Denver,Colorado 80202

 Attorney Andrew Ringel phone# (303)-628-3300

s

Defendant 4: ( Colorado State Trooper) Robert Howell (represented by attorney:" Scott Neckers " )

 20591 Highway 160 West,

Durango, Colorado, 81301

 Phone:( 970)-385-1675

  Attorney Mr. Neckers phone# 303- 866-9484

  Attorney Mr. Neckers email.: SAN@omhlaw.com

 Defendant 5: Unknown "Sergeant" of the Colorado State Patrol phone# 719-322- 6388

 20591 Highway 160 West

Durango, Colorado, 81301

 Cell Phone # (719)-322-6388
 Work phone#( 970)-385-1675

2

**C. JURISDICTION**

*Identify the statutory authority that allows the court to consider your claim(s): (check one)*

 *\*_ Federal question pursuant to 28 U.S.C. § 1331 (claims arising under the Constitution, laws, or treaties of the United States)

   List the specific federal statute, treaty, and/or provision(s) of the United States

Constitution that are at issue in this case.

**A. (Several violations) of the Fourth amendment of the United States Constitution**
1. Unlawful search and seizure
2. Miraculous prosecution
3. Illegal /False arrest
4. Police misconduct/unprofessionalism
5. Abusive of authority
6. Filing false or misconstruing statements in affidavit to obtain warrants.
7. Dishonesty "under Oath"

**B. Violation of the 14th amendment of the United States Constitution**

1. Right to due process

**C. Violation of The State of Colorado Constitution Art.II, section 7-**

1. unlawful search and seizure

Diversity of citizenship pursuant to 28 U.S.C. § 1332 (a matter between individual or corporate citizens of different states and the amount in controversy exceeds $75,000)

Plaintiff, Mr. Reynolds is a citizen of the United States of America and was a resident of Colorado at all relevant times.

Defendant, Bradley Spargur is a citizen of the United States of America,and is a resident of the State of Colorado

If Defendant 1 is a corporation, All Defendants were working under the color of law under Colorado State Patrol, at all relevant times.

Bradley Spargur is incorporated under the laws of The United States of America and

the State of Colorado.

Bradley Spargur at all relevant times was a citizen of the United States and a resident of Colorado and was acting under the color of law in his capacity on 4-29-2022 as a Colorado State Trooper, as Spargur is POST certified and employed by Colorado State Patrol.

Defendant, Robert Howell is a citizen of the United States of America,and is a resident of the state of Colorado.

Robert Howell is incorporated under the laws of The United States of America and the State of Colorado.

Robert Howell at all relevant times was a citizen of the United States and a resident of Colorado,and was acting under the color of law in his capacity on 4-29-2022 as a Colorado State Patrol. Trooper, Howell is POST certified and employed by Colorado State Patrol.

Defendant, Unknown "Sergeant" of The Colorado State Patrol #6388 is a citizen of the  United States of America and is a resident of the State of Colorado.

This Unknown "Sergeant" is incorporated under the laws of the United States of America and the State of Colorado.

Unknown "Sergeant" at all relevant times was a citizen of the United States and a resident of Colorado, and was acting under color of law in his capacity on the morning of 4-30-2022 as a "Ranking" officer within the Colorado State Patrol. He is employed by Colorado State Patrol. (Assumed to be POST certified)

(*If more than one defendant is named in the complaint, attach an additional page providing the same information for each additional defendant*.)

**D. STATEMENT OF CLAIM(S)**

*State clearly and concisely every claim that you are asserting in this action. For each claim, specify the right that allegedly has been violated and state all facts that support your claim, including the date(s) on which the incident(s) occurred, the name(s) of the specific person(s) involved in each claim, and the specific facts that show how each person was involved in each claim. You do not need to cite specific legal cases to support your claim(s). If additional space is needed to describe any claim or to assert additional claims, use extra paper to continue that claim or to assert the additional claim(s). Please indicate that additional paper is attached and label the additional pages regarding the statement of claims as "D. STATEMENT OF CLAIMS."*

CLAIM ONE: (CLAIMS)  1.Illegal search and seizure 2. false arrest/illegal arrest 3. police misconduct 4. miraculous prosecution 5. abuse of authority 6.& 7.  Federal level  Constitution Violations: (4th and 14th Amendments) and 8.State level Constitutional Violations: Art II section 7 of the Colorado Constitution.

Supporting facts:

1).Defendants Bradley Spargur and Trooper Robert Howell and an unknown "SERGENT", all three members of the Colorado State Patrol, violated multiple constitutional rights of Mr. Reynolds, both at the state and federal levels, by unlawfully seizing and impounding his motorcycle along with his personal belongings, including luggage and a cell phone, in Dolores County, Colorado, without any legal justification.

2). Throughout the case, defendant Bradley Spargur continued to infringe upon Mr. Reynolds's rights by knowingly providing false and misleading statements in affidavits to various judges in Montezuma County and testifying at court proceedings.

3).In fact, Spargur was dishonest " under oath" during the suppression hearing on November 4th,2022 and used misconstrued statements in affidavits to obtain two search warrants and the arrest warrant.

4). A state court Honorable Judge Plewe *(the same Judge that signed the original search warrant)* had previously determined that defendants Spargur and Robert Howell unlawfully seized and impounded Mr. Reynolds's motorcycle on the night of April 29, 2022.

5). The Colorado State Patrol, the defendants' employer, has also concluded that the defendants violated Mr. Reynolds's constitutional rights while breaching their own established procedures and departmental policies.

6). On May 23, 2023, a complaint was filed with the Colorado State Patrol, and the subsequent communication and investigation process proceeded at an exceedingly slow pace.

7). On December 22, 2022, Major Brett L. Williams of the Colorado State Patrol informed Mr. Reynolds about the internal affairs investigation report regarding Bradley Spargur, *which found Spargur guilty of multiple violations, including discourteous, rude, and unprofessional conduct, inappropriate comments, abuse of authority, civil rights infringements of false searches, and false arrest.*

8). These violations are categorized as Level 1 complaints under state patrol policies and took 211 days to complete the investigation.

9). Major Mark Mason of the Colorado State Patrol informed Mr. Reynolds about the findings

concerning Trooper Robert Howell, which were concluded on January 5, 2024.

10). Trooper Robert Howell was found:*( negligent and incompetent) in the performance of his duties, sustaining a civil rights violation related to the false search*, 226 days after the complaint was filed. According to state patrol policies, investigations are required to be completed within 60 calendar days; however, due to the complexity of this case, the deadline for completion has been extended to December 1, 2023.

11). This extension was communicated in a letter from Major Brett Williams. Despite this extension, which was set for December 1, six months had already elapsed, and Spargurs report was not received until December 20, 2023.

12). Additionally, Trooper Robert Howells ' report wasn't received until January 05, 2024. On January 26, 2024, Allison Ailer, from the Attorney General's office contacted Mr. Reynolds, who was serving as the representative for the Colorado State Patrol,as she requested that all future communications be directed to her.

13). Allison Ailer also confirmed that she had received the demand letter addressed to the Colorado State Patrol dated January 8, 2024. A settlement proposal was presented by Allison Ailer. on behalf of the Colorado State Patrol at the end of February 2024, with a stipulated decision deadline of March 8, 2024.

14). The offer amounted to $500,000 in exchange for a signed release of all claims or potential claims against the Colorado State Patrol, its troopers, and all other state employees.

15). At that time, Mr. Reynolds sought legal counsel for advice and ultimately engaged the services of Michael Fairhurst and Daryl Kilmer of Kilmer and Lane, anticipating the approaching statute of limitations.

16). In April 2024, a tolling agreement was meticulously drafted and executed by both the plaintiff and the defendants to suspend the statute of limitations, thereby facilitating potential good faith negotiations.

17). Mr. Fairhurst Reynolds' attorney engaged in ongoing discussions with the Attorney General's office regarding a possible settlement; however, the case appeared to be consistently minimized.

18). This situation persisted until roughly three weeks prior to the mediation scheduled for October. During the mediation session with Judge Mix on October 24,2024, the Attorney General's office now represented by Mr. Ankley, who represented the Colorado State Patrol, proposed a settlement of $100,000 to resolve the case.

19). This offer emerged six months after the signing of the tolling agreement, raising concerns about the genuineness of the negotiations and suggesting a lack of commitment from the Attorney General's office to reach an agreement in good faith and in a timely fashion.

20). The first offer was originally $500,000,which was the counter offer of 15.2 million from the original demand letter sent to the State Patrol in January of 2024.

21). Following the mediation session, Mr. Reynolds and Mr. Fairhurst were unable to come to a consensus, leading Mr. Fairhurst to decide to terminate his professional relationship with Mr. Reynolds as his client, thereby leaving Mr. Reynolds without representation.

22).On October 31, 2024, after being released by Mr. Fairhurst, Mr. Reynolds reached out to Mr.Clayton Ankley, the new representative from the Attorney General's office that represents Colorado State Patrol, to discuss the possibility of a settlement with the hope of achieving an agreement in good faith, Since there was a tolling agreement signed between all attorneys and Mr. Fairhurst (but no longer represented Mr.Reynolds) made a counter offer to the attorneys general office of 7.8 million,in which Mr. Reynolds once again tried to negotiate.

23). Unfortunately, they returned with the same offer weeks later, indicating that Mr. Reynolds was provided only three days to accept the 100,000, despite being unrepresented at that time.

24).This once again constituted a breach of the tolling agreement intentionally knowing Mr. Reynolds had no representation.(this showing their true intentions)

25). The extensive interactions between the initial complaint and the internal investigation process of the Colorado State Patrol, along with communications with the Attorney General's office, have advanced at a notably slow pace.(as emails and dates of reports will show)

26). This raises concerns regarding a possible reluctance to reach a timely settlement or to adhere to the statute of limitations, as investigations have extended over several months, with email responses occasionally taking weeks.

27). Such delays reflect a troubling disregard for the statute of limitations in this matter and present obstacles in resolution of this case. Mr. Reynolds made good faith attempts to communicate, and he had no control over the duration of the investigation process by the Colorado State Patrol or the lack of communication with the Attorney General's office.

28). This situation represents a breach of the tolling agreement, at no fault of Mr.Reynolds.

29). The extensive communications between the initial complaint and the internal investigation process involving the Colorado State Patrol, along with interactions with the Attorney General's office, have proceeded at an alarmingly slow pace.

30). Such delays indicate a possible reluctance to achieve a timely settlement or to consider the statute of limitations, as investigations have extended over several months, with responses to emails occasionally taking weeks.

31). These delays reflect a concerning disregard for the statute of limitations in this matter and diminish any good faith basis opportunity for resolution on behalf of the Attorney General's office and Colorado State Patrol..

32). Mr. Reynolds has made good faith attempts to communicate, but he has had no control over the duration of the investigation, process by the Colorado State Patrol or the lack of communication with the Attorney General's office.

33). Mr. Reynolds now seeks remedy in federal court for intentional violations of clearly established federal and state law by Colorado State Troopers Bradley Spargur and Robert Howell and an Unknown "Sergeant" phone#6388, of The Colorado State Patrol.

### Defendants pull over Mr. Reynolds' motorcycle without incident…

1). On the evening of April 29, 2022, Mr. Reynolds was lawfully operating a Harley-Davidson motorcycle while traveling from Grand Junction through Dolores County on Highway 141, north of Egnar, Colorado, about 12 miles,from Dove Creek, Colorado.

2). At that time, two deputies from the Dolores County Sheriff's Office, Coty Kelsaw and Undersheriff Matt Purkatt, began to follow him. Mr. Reynolds proceeded to a 24-hour truck stop, where he paused to warm up, have dinner, make phone calls, refuel his motorcycle, and don additional layers for the continuation of his journey.

3). Deputy Coty Kelshaw interacted with Mr. Reynolds at the convenience store,where they engaged in a short conversation about Mr.Reynolds motorcycle.

4). Meanwhile, defendants Bradley Spargur and  Trooper Robert Howell were in Montezuma County and began to head towards Dolores County as Mr. Reynolds continued on his way headed toward Montezuma County ,Coty Kelshaw had contact with Trooper Bradley Spargur via

(cell phone) as Kelshaw testified to this, as both Coty Kelshaw and Matt Purkatt continued to follow Mr.Reynolds.

5).Eventually,Colorado State Troopers Bradley Spargur and Robert Howell activated their patrol lights, signaling for Mr. Reynolds to stop and pull to the side of the road. Mr. Reynolds promptly complied with this directive in a safe and complete manner.

6). The encounter occurred around 11:00 p.m. on April 29, 2022, in Dolores County, on Highway 491, south of Dove Creek, in a remote area.

7). Undersheriff Matt Purkat and Deputy Coty Kelsaw joined Bradley Spargur and Robert Howell shortly thereafter as they initiated their interaction with Mr. Reynolds.

8). Prior to this, Undersheriff Matt Purkatt and Coty Kelshaw had been monitoring Mr. Reynolds for a considerable period.

9).Matt Purkatt and Coty Kelshaw mostly remained in the background during the questioning and were not the primary officers engaging with him but were in contact with Bradley Spargur throughout the entire process,as testified by Kelshaw..

10). The Colorado State troopers Bradley Spargur, Rober Howell  conducted the questioning, searched Mr. Reynolds and his motorcycle, and seized his personal belongings and motorcycle.

11). Furthermore, Coty Kelshaw testified at the suppression hearing on November 4, 2024, that his communications with Officer Bradley Spargur were conducted via cell phone rather than through dispatch during their interactions that evening.

*12). It is noteworthy that no tickets, warnings, or summons were issued to Mr. Reynolds, which is relevant to the objective reasonableness of the initial stop. Additionally, there was no active investigation involving Mr. Reynolds, as he was found to have a" clear and valid" status through the Colorado State Patrol dispatch on two occasions.*

13). As stated in Spargur's Affidavit when he applied for the search warrant.Spargur actually doubled down asking dispatch twice, after coming back "clear and valid" both times.

14).  Mr. Reynolds did ask to leave and was denied by Officer Kelshaw ,so the eventful night continued, into an unlawful impound of Mr. Reynolds motorcycle and personal belongings,without any legal justification, leaving Mr. Reynolds hundreds of miles from home with no transportation and without any of  his personal  belongings and his daily medications.

 **Defendants falsely claim they pulled over Mr. Reynolds for minor alleged traffic Infractions. The truth is that the defendants were trying to concoct a legal basis to Search Mr. Reynolds' and his motorcycle without a warrant or consent.**

1).The basis for the defendant's stop of Mr. Reynolds reportedly stemmed from minor alleged class b traffic infractions, specifically claims related to having more than two auxiliary driving lights, displaying more than four headlamps simultaneously, and failing to dim headlights when approaching other vehicles.

2). Additionally, there was an assertion regarding a discrepancy in the reported color of the motorcycle compared to its actual color as noted in the registration records maintained by the Colorado Department of Revenue.

3). It was apparent to the defendants that these alleged traffic infractions were relatively minor and, on their own, would not justify the seizure and impoundment of Mr. Reynolds's motorcycle and belongings at that time.

4). However, these purported minor infractions provided the defendants with a pretextual basis for the stop, which did not align with the true motive for pulling over Mr. Reynolds on a dark rural road during the chilly spring night in Colorado, particularly considering it was a" high risk" traffic stop for alleged light violations, seemingly pretty excessive and very extensive.

5). The actual reason for the stop was to conduct an investigation, with hopes of establishing a legal justification for searching Mr. Reynolds's person and motorcycle, and potentially arresting him. Prior to the traffic stop, a representative of the local police department and the Montezuma Drug Task Force informed Defendant Sparger that Mr. Reynolds could possibly be transporting contraband on his motorcycle.

6).This information allegedly originated from an unidentified informant, yet no reports corroborating this claim were present and or are present.

7). Furthermore, Tom Quinett had indicated that Defendant Sparger would need to develop his own probable cause to approach Mr. Reynolds since the informant would not serve as a witness. Therefore the information that was obtained could have been known to everyone.

8). There was no credible evidence at the time suggesting that Mr. Reynolds was transporting contraband or engaging in any illegal activities, and the validity of the information provided could not be substantiated.

9).  Subsequently, Defendant Sparger communicated the details of his discussions with Tom Quinett to his fellow officers, emphasizing the necessity of establishing their own probable cause to stop Mr. Reynolds, search his motorcycle, and potentially effectuate an arrest.

10). Upon stopping Mr. Reynolds Spargur instructed him to dismount his motorcycle, and walk backwards with his hands on his head to the front of Defendant Sparger's patrol vehicle, nearly 20 ft away, where Spargur proceeded to search him. No weapons, drugs, or other contraband were discovered during this search.

11). At this point, Defendant Spargur assumed primary responsibility for the interaction, while Howell assisted. During this time, Defendant Spargur briefly addressed the alleged registration violation concerning the incorrect color of the motorcycle with Mr. Reynolds, and there was a further discussion regarding the appropriateness of conducting a frisk for weapons or a search of the motorcycle.

12). Defendant Sparger also inquired about the bright lights on the motorcycle, to which Mr. Reynolds explained that he was utilizing auxiliary lights, equipped with LEDs, instead of his high beams, as these were necessary for keeping an eye out for deer.

13). The defendant did not inquire of Mr. Reynolds whether he could or would turn off the lights on the motorcycle, which would have been a reasonable request, particularly considering the situation.

14). The defendant had pulled Mr. Reynolds over in part due to concerns regarding the brightness of the lights, which were indeed turned off in the( video evidence, indicating they were operable.) Furthermore, defendant Spargur informed Mr. Reynolds of his intent to search the motorcycle for weapons, to which Mr. Reynolds vocally **objected** several times, recording his objections on his phone, a right he held under the circumstances.

15).Spargur at this time told Mr. Reynolds, "what exactly was going to happen" as Spargur turns around to officers and tells them he is going to"retrieve his gloves".(as video will show)

16). Despite Mr. Reynolds' objections, defendant Spargur proceeded with what he termed a weapons frisk of the motorcycle; however, this action resembled more of a search as he opened

the saddlebags and rearranged their contents.

17). Throughout this frisk or search of the motorcycle, the defendant found no weapons or contraband.

18).The actions of the defendants unnecessarily escalated the stop by first conducting a frisk on Mr. Reynolds and subsequently searching the motorcycle's saddlebags, ostensibly to confirm the absence of firearms that could be used to justify further escalation, all without Mr. Reynolds' consent.

19). Notably, at this time, Mr. Reynolds was surrounded by four armed officers, all with flashlights focused on him, and positioned approximately 20 feet from the motorcycle. Throughout the encounter, Mr. Reynolds did not exhibit any behavior that would suggest he posed a threat to any officer, third party, or himself.( As video will show)

### Defendants illegally seize and impound Mr. Reynolds motorcycle and belongings.

1). Following the search conducted by Officer Spargur for weapons, there was a request for a tow truck to remove Mr. Reynolds's motorcycle.

2). Despite the lack of even minimal probable cause to suspect contraband either on Mr. Reynolds or within the motorcycle, the defendants, acting together, agreed to impound the motorcycle.

3). Officer Spargur informed Mr. Reynolds that the towing was due to an alleged registration violation and the brightness of the motorcycle's lights, which, as shown in the video, could have been adjusted. Mr. Reynolds requested to leave the motorcycle in place and to send someone to retrieve it. Officer Spargur denied this reasonable request, fully aware that the motorcycle posed no legitimate threat to community safety, as Mr. Reynolds indicated. 4). He could have safely left it on the side of the road if necessary.

5).The defendants did not seize Mr. Reynolds's motorcycle to fulfill a legitimate community caretaking function; their only motivation appeared to be to conduct an illegal search at their convenience, as evidenced by video recordings on 4/29/2024 and phone calls recorded the following morning on 4/30/2022 in the attempt to regain possession of his belongings and motorcycle.

6). After Mr. Reynolds opted to walk away, he had already arranged for a ride that arrived shortly thereafter. This decision was made to avoid escalating the situation with the officers, as officers were aware of this ride the Licence plate number is at the top of troopers Howell's report, as they ran the plate through dispatch as well and Spargur had made it pretty clear that "they were taking the bike" and he was going to do whatever he wanted against Mr. Reynolds wishes.( as video will show.).

7). Once Mr. Reynolds left, Officers Spargur and Howell discussed the possibility of inventorying the motorcycle prior to towing, despite having already searched it without consent.

8). They suggested the unnecessary step of obtaining a warrant; nevertheless, they proceeded to conduct an inventory search of the motorcycle and its contents without a warrant or any legitimate probable cause.

9). Officers Spargur and Howell agreed that an inventory should be performed and noted the

items on the appropriate form during this questionable procedure.

10). Despite no contraband or other evidence related to a crime being found,they sealed the motorcycle with evidence tape and had it towed to the Cortez Police Department, where a hold was placed on it, Colorado State Patrol "Sergeant" denied giving Mr. Reynolds the location of the motorcycle or his personal belongings, during a recorded phone call with this unknown Sergeant of the Colorado State patrol, for all Mr. Reynolds has is a video of the recorded phone calls with a phone number the morning of 4-30-2022.

11). On April 30, 2022, Officer Spargur filed an affidavit containing falsified information in Montezuma County, which was subsequently signed by Judge Plewe at 8:55 p.m., nearly 24 hours after the motorcycle and its contents were illegally taken.( *same Judge that founded the 4th amendment violation on November 4th 2022 during the suppression hearing)*

12). During the subsequent search, contraband was seized from a locked bag. But no warrant was ever signed for the noted locked bag only for the Harley Davidson that had already been searched. Officer Spargur then authorized using the same false affidavit to obtain an arrest warrant for Mr. Reynolds on May 5, 2022, leading to his arrest without incident.

13). Unfortunately, Mr. Reynolds's criminal case progressed slowly, leaving him with no option but to remain in the Montezuma County jail for a total of 188 days as the case gradually advanced due to the charges Spargur filed and intentionally kept pursuing himself.

14). Charges were originally brought in Montezuma County, but eventfully dismissed due to Mr. Reynolds being in Dolores County when the motorcycle and personal belongings were unjustly taken,charges were once again pursued by the prosecution in Dolores County, *giving Spargur and Howell the opportunity to disregard at this time,* but the prosecution and State Troopers instead persisted.

15). Coty Kelshaw with the Dolores County Sheriff's Office, was a witness to the case at hand and testified against Mr. Reynolds but was also the officer that would transport Mr.Reynolds from Montezuma County into Dolores County for court proceedings, which is also a concern and conflict considering he was a clearly established witness in Mr. Reynolds' case having the first encounter with Mr, Reynolds the evening of 4-29-2022.

### The State courts Honorable Judge Plew rules that Defendants violated Mr.Reynolds' Constitutional rights by seizing Mr Reynolds' motorcycle..

1).Mr. Reynolds, through his criminal defense attorney Christian Hatfield (*which is now the DA of Montezuma County)*, submitted a motion to suppress evidence that law enforcement acquired during the search of his motorcycle, which had been impounded unlawfully.

2).On November 4, 2022, Honorable Judge Plewe *(same Judge that signed the original search warrant)* conducted a hearing regarding this motion. During the proceedings, the Court determined that the initial traffic stop conducted by Howell and Spargur was lawful, as was the initial pat down for weapons on the complainant.

3). While the Court did not make a ruling concerning the weapons on the weapons frisk, or search of the bike since nothing was discovered, it acknowledged that this aspect posed constitutional concerns. (The defendant was 20 ft. From the motorcycle)

4). However, the State Court *(Honorable Judge Plewe, same signer of the original search warrant)* found that the seizure of the motorcycle by defendants Bradley Spargur and Robert Howell, which subsequently led to an inventory search resulting in a search warrant, was in

violation of the Fourth Amendment and thus suppressed all contraband.

5). Consequently, any evidence acquired by the police following the motorcycle's seizure was also deemed inadmissible and the case was eventually completely dismissed on December 2, 2022 and sealed by the prosecution following a motion signed by Honorable Judge William Furse. ( *Mr. Furse was an original prosecutor D.A. in this case*)

### The Colorado State patrol agrees that the defendants violated Mr. Reynolds constitutional rights.

.

1). As part of a later internal affairs investigation that took approximately 8 months, even the Colorado State Patrol agreed that Defendants Howell and Spargur violated Mr. Reynolds' constitutional rights 2). Regarding Defendant Spargur, the CSP found:..

***Discourteous/rude/unprofessional/inappropriate behavior or comments ...Abusive of authority ….Civil rights violation (false search) …. Civil rights violation (false arrest)***

*Were all found to be **sustained** during the internal affairs investigation process*

a) Sergeant Spargur did not meet the elements defined as probable cause for the contact in regards to the mounted lights to the front of the motorcycle. He had ample opportunity to clarify Colorado State Statutes in regards to the number and style of allowed lights described.

b) Sergeant Spargur and Trooper Robert Howell did have probable cause to stop the vehicle based on the color mis-match as they were aware of the registered color of the motorcycle prior to the stop, and identified the motorcycle as a different color. Colorado Revised Statutes 42-3-126(1) If the primary body color of a motor vehicle is subsequently changed from the primary body color that is identified in the application for registration for the motor vehicle, the owner of the motor vehicle shall notify the department in writing, within thirty days after the color of such motor vehicle is changed, of the new primary body color of the motor vehicle. The primary body color of a motor vehicle shall be identified using the standard color descriptions of the department that are established pursuant to section 42-3-105 (1)(e). (2) Any person who violates subsection (1) of this section commits a class B traffic infraction.

c) Sergeant Spargur used the registration violation as an attempt to gain access to the saddle bags of the motorcycle and made repeat statements with the complainant about the need to tow the motorcycle if the registration card could not be found. Sergeant Spargur did not have evidence that the motorcycle was stolen because the motorcycle came back clear through dispatch and the registered owners last name was the same as the complainants. Sergeant Spargur did not allow the complainant to leave the motorcycle on the roadside. It is my determination this was done to unduly influence the complainant to allow Sergeant Spargur access to the motorcycle.

d) Sergeant Spargur was in violation of the Colorado State Patrol Policies and Procedures in regards to legal authority to tow and impound this motorcycle for the lights and registration violations. This is a violation of Colorado State Patrol Policies and Procedures 4.01.0403(4), because the lights and registration

violations do not constitute grounds to tow a vehicle. Sergeant Spargur had the opportunity to clarify department policies prior to deciding to impound the complainant's motorcycle. Sergeant Spargur has signed off on this specific policy through the Colorado State Patrols internal policy issuance and tracking systems prior to this contact. The tow of the motorcycle appeared centered around the desire to search this motorcycle for the reported narcotics.

e) Sergeant Spargur's tow, impound and subsequent search of this vehicle were in violation of Colorado State Patrol Policies and Procedures 4.01.0304(A)(4)(a), A trooper shall not tow a vehicle for being in violation of registration, driver's license or inspection laws. . . . Sergeant Spargur maintains that he towed the motorcycle specifically for the light and registration "violations". He maintains there was no other reason for towing the motorcycle. Towing the motorcycle was therefore an unlawful search and seizure, in violation of the Fourth Amendment. f) The subsequent arrest warrant for the complainant based off the Fourth Amendment violation by Sergeant Spargur was not valid under the Fruit of the Poisonous Tree Doctrine, because the evidence against the complainant was obtained through an unlawful seizure of the motorcycle. The motorcycle was towed and impounded not complying with department policies or standard practices. Had the motorcycle not been impounded the narcotics or the weapon would not have been located. Therefore, there would likely have not been a basis for the warrant for the arrest of Mr. Reynolds.

g) Without the elements gained in the unlawful search and seizure of the motorcycle, there most likely would have been no probable cause for the issuance of an affidavit for the arrest warrant completed by Sergeant Spargur and provided to the District Court for the issuance of the final arrest warrant for the complainant. The District Court ruled in this matter at the hearing on the complainant's motion to suppress and found that the search of the motorcycle was unlawful. As a result, all evidence against the complainant was suppressed.

3). Regarding Defendant Howell, the CSP found: ***A (.Failure/neglect/incompetent) to perform duties B.Civil Right violation of( false search) all  to be sustained*** a) The judge in the case ruled, and the defense agreed, that the initial traffic stop and pat down of the complainant were valid.

b) Spargur and Howell discussed the registration violation and used it to attempt to gain access to search the motorcycle. Spargur indicated they would have to tow the motorcycle if the complainant could not locate the registration. Neither Spargur, nor Howell, thought that the motorcycle was stolen, which alleviated the need to tow it to confirm the motorcycle's true identity and owner.

c) Towing a vehicle for registration violations violates Colorado State Patrol policy 4.01.0403 unless it falls under the "Community Caretaking Function," which this did not. In addition, the Colorado Supreme Court has ruled that the seizure of vehicles by the police for caretaking purposes, including the inventory of the lawfully seized vehicle, can be reasonable under the Fourth Amendment, even without probable cause and a warrant, if conducted for administrative

"community caretaking functions" rather than for the purpose of conducting a 10

criminal investigation."

d) However, this seizure and inventory was clearly done for the purpose of conducting a criminal investigation as Spargur stated in his affidavit "pending further investigation".. A secondary reason given for impounding the the motorcycle was due to the lights to the front being unsafe. However, neither Spargur, nor Howell, made any attempt to discern whether the lights were actually in violation or if they could be made safe, which would have allowed it to travel safely and lawfully down the road.

e) At some point, Quinnett informed Spargur that the informant would not testify, and that they would need to develop their own probable cause for the stop and search. Therefore, the information was only hearsay and could not be used as the basis for probable cause to seize the motorcycle and apply for a search warrant. f) Howell contends that he was unaware that the informant would not testify, so he was operating under the assumption that they had reasonable articulable suspicion that a crime had been committed at the onset, and that with what they learned and observed prior to and during the contact that they would be able to apply for a probable cause search warrant.

g) This argument is not persuasive, as he had a duty to know what information was known or not known. Therefore, there were no justifiable grounds on which to impound the motorcycle.

h) It follows that the inventory search of the motorcycle was also not justified. Howell did state that they should seal the motorcycle and apply for a search warrant. However, he then agreed with Spargur that an inventory should be conducted and watched and wrote down items from that inventory on the CSP 80. i) The improper inventory then led to the search warrant and arrest warrant being obtained unreasonably, which led to the suppression of the contraband and eventual dismissal of charges in December of 2022.

4). However, Mr. Reynolds has currently received no remedy for the Defendants' blatant violations of his state and federal constitutional rights foreseeably resulting in nearly seven months of unjustified and harrowing jail time away from his wife, children, and other loved ones,with notable severe health concerns, and even a longer period of time approximately 224 days without his only transportation due to the illegal impoundment of the motorcycle and belongings that was found profoundly damaged(noted over 4,000.00 dollars)upon return of the motorcycle on December 9, 2022 from the Cortez Police Department..

**E. REQUEST FOR RELIEF**

*State the relief you are requesting or what you want the court to do. If additional space is needed to identify the relief you are requesting, use extra paper to request relief. Please indicate that additional paper is attached and label the additional pages regarding relief as "E. REQUEST FOR RELIEF."*

### E.  " Request for Relief:"
#### I.     First Claim for relief

**42 U.S.C.§ 1983- Violations of the Fourth Amendment of the United States Constitution- Several different violations that fall under this same amendment: 1. Unlawful Search and Seizure…2. Miraculous prosecution.3.False arrest.4.Police misconduct/unprofessionalism..5.Abuse of authority**

**(against Bradley Spargur and Robert Howell of the Colorado State Patrol, Unknown "Sergeant" phone #6388)**

1). The allegations presented in this complaint suggest that the defendants acted under the authority of state law and within the scope of their roles as Colorado State Patrol troopers at all relevant times related to these claims.

2). This conduct infringed upon federally protected rights under the Fourth Amendment of the United States Constitution, specifically the right to be secure in one's personal property, including the plaintiff's motorcycle and personal belongings, from unreasonable searches and seizures by law enforcement.

3). The defendants, working collaboratively, unreasonably seized and took possession of the plaintiff's motorcycle and personal belongings while he was operating it legally.

4). At no pertinent time did the defendants possess probable cause, reasonable suspicion, or any other legally valid justification to believe that the plaintiff had engaged, was engaging, or was about to engage in any unlawful activity.

5). Furthermore, the defendants lacked probable cause, reasonable suspicion, or a valid legal basis to suspect that the motorcycle contained illegal items, particularly after having searched it twice, (without consent).

6). The defendants did not obtain a warrant authorizing the seizure of the plaintiff's motorcycle or personal property.

7). They forcibly seized the motorcycle and the plaintiff's belongings, despite the absence of any legal basis for such action and in direct violation of their own departmental policies.

8).  As a result, the defendants violated the plaintiff's federal constitutional rights by unlawfully seizing the motorcycle and personal items in a manner that was objectively unjustified given the circumstances.

9). The defendants engaged in a collective effort to seize the plaintiff's motorcycle and belongings without the necessary legal justifications or, alternatively, each defendant failed to take appropriate measures to intervene in the unlawful search and seizure, despite having the capacity and opportunity to do so.

10). Each defendant is therefore liable for the damages arising from this objectively unlawful seizure, which includes, but is not limited to, the reasonably foreseeable impacts stemming from the illegal confiscation of the plaintiff's motorcycle and belongings.

11). This includes the distress and hardships experienced by the plaintiff as a result of being

compelled to spend resources to recover his motorcycle and pursue legal recourse against the actions of the defendants.

12). The conduct of the defendants described herein was accompanied by elements of malice or willful and wanton disregard, suggesting that they must have understood the dangerousness of their actions, which were carried out heedlessly and recklessly, without consideration for the consequences or the rights and safety of others, particularly that of the plaintiff.

13). Mr. Reynolds is disabled and has multiple intricate medical conditions , including coronary artery disease, congestive heart failure (with an ejection fraction rate of 48 percent), chronic obstructive pulmonary disease (COPD), sleep apnea, anxiety, and depression, with a recent heart attack occurring in May 2024.

14). Furthermore, he underwent spine surgery on December 3, 2024.

15). The defendants actively participated in all court proceedings concerning Mr. Reynolds' medical situations that were brought up in hopes for a bond reduction.

16).In light of these circumstances and the ongoing charges Spargur intentionally sought, the defendants continued to pursue the matter diligently.

17). Knowing from the night of 4-29-2022,. was in violation of Mr. Reynolds constitutional rights, as this has delayed the already lengthy process of the disability certification, by missing appointments and not being able to file the necessary paperwork, which has led to a denial by social security.

18). Which has made Mr. Reynolds restart the lengthy process and is currently awaiting status and has been for over two years now.


## E. II.  SECOND REQUEST OF CLAIM FOR RELIEF

### .Colo. Rev. Stat. § 13-21-131 – Violation of Colo. Const. Art. II, Section 7 – Unlawful Search and Seizure

#### (Against Bradley Spargur,  Robert Howell, Unknown "Sergeant"#6388)


1). Plaintiff hereby incorporates all other paragraphs of this Complaint as if fully set forth herein.

2). The Defendants acted under color of state law and within the course and scope of their employment as ColoradoStatePatrol troopers at all times relevant to the allegations in this Complaint.

3). At all relevant times, the Defendants were "peace officers" under Colo. Rev. Stat. § 24-31-901(3) and were employed by the ColoradoStatePatrol.

4). Plaintiff had a protected interest under the Colorado Constitution, article II, §7 in being secure in his personal property, including his motorcycle and personal belongings, from unreasonable seizures by law enforcement personnel while traveling the roads of Colorado..

5). Defendants, acting in concert with one another, unreasonably seized and took possession of Plaintiff's motorcycle that he had been operating and his personal belongings, in violation of the Constitution of the State of Colorado.

6). Defendants did not at any relevant time have probable cause or reasonable suspicion, or any other legally valid basis, to believe that Plaintiff had committed, was

committing, or was about to commit any violation of the law.

7). Defendants did not at any relevant time have probable cause or reasonable suspicion, or any other legally valid basis, to believe that Plaintiff's motorcycle had contents that were illegal.

8). Defendants did not at relevant time have a reasonable belief that Plaintiff's motorcycle or possessions presented a legitimate safety threat.

9). The motorcycle could not have been lawfully impounded pursuant to Defendants' legitimate community caretaking function.

10). Defendants' sole reason for impounding the motorcycle was to search it.

11). Defendants did not at any relevant time have a warrant authorizing any seizure of Plaintiff's motorcycle or belonigings.

12). Defendants searched and seized Plaintiff's motorcycle and personal property against his will, despite lacking any legally valid basis for the seizure.

13). Defendants violated Plaintiff's state constitutional rights by engaging in an unlawful seizure of Plaintiff's motorcycle and belongings that was objectively unjustified in light of the facts and circumstances confronting Defendants before and during their encounter with Plaintiff.

14). Defendants engaged in a collective plan or effort to seize Plaintiff's motorcycle and belongings without probable cause, reasonable suspicion, or another valid legal basis ,alternatively, each Defendant failed to take reasonable steps to intervene in the other Defendants unlawful seizure of Plaintiff's motorcycle and belongings, despite being in a position and having the opportunity to do so. (four armed officers)

15). Each Defendant is therefore liable for the damages resulting from the objectively unlawful and unjustified seizure of Plaintiff's motorcycle and belongings.

16). Those damages include but are not limited to the reasonably foreseeable effects stemming from illegally seizing his motorcycle,including damages surrounding Plaintiff being forced to spend 188 days in jail due to the Charges Spargur himself pursued and with the Defendants illegally seizing his motorcycle and personal belongings for an additional 209 days with noted over 4,000.00 in damages to his motorcycle.

17). Defendants subjected or caused Plaintiff to be subjected to the deprivation of individual rights secured by the bill of rights of the Colorado Constitution.

18). Defendants did not act upon a good faith and reasonable belief that their actions in seizing Plaintiff's motorcycle and personal belongings without probable cause, reasonable suspicion, or another valid legal basis were lawful, especially by signing off on the particular Colorado State Patrol policies, prior to contact with Mr.Reynolds.

19). The acts or omissions of the Defendants were the moving force behind, and the proximate cause, of injuries sustained by Plaintiff.

20). Defendants' conduct described herein was attended by circumstances of malice, or willful and wanton conduct, which the Defendants must have realized was dangerous, or that was done heedlessly and recklessly, without regard to the consequences, or of the rights and safety of others, particularly Plaintiff.

### E. III. THIRD REQUEST FOR CLAIM OF RELIEF: Violations of the 14th Amendment right of the United states Constitution, Right to Due Process, section one: ( against Bradley Spargur, Robert Howell, Unknown "Sergeant" of Colorado State Patrol)

1).The present document incorporates all paragraphs of this complaint as if they were fully restated herein.

2). The defendants acted under state and federal law during the course of their duties as Colorado state troopers at all times pertinent to the allegations herein.

3). The plaintiff had a protected interest under the Fourteenth Amendment to the United States Constitution.

4). The defendants, acting in concert with one another, unreasonably seized and took possession of the plaintiff's motorcycle and personal belongings, in violation of the Fourteenth Amendment.

5). At no point did the defendants possess probable cause, reasonable suspicion, or any other legally valid basis to believe that the plaintiff had committed, was committing, or was about to commit any violation of the law; nonetheless, they continued to take Mr. Reynolds's possessions.

6). The defendants engaged in a coordinated effort to seize the plaintiff's motorcycle and personal belongings without any plausible cause, reasonable suspicion, or other valid legal justification.

7). Alternatively, each defendant failed to take reasonable steps to intervene with the actions of the others regarding the wrongful seizure of the plaintiff's motorcycle and personal belongings, despite being in a position to do so

8). Each defendant is therefore liable for the damages resulting from the objectively unlawful and unjustified seizure of the plaintiff's motorcycle and personal belongings.

9). These damages include, but are not limited to, the reasonably foreseeable effects stemming from the illegal seizure of the motorcycle, including the consequences of the plaintiff being forced to spend 188 days in jail and 209 days without his motorcycle and personal belongings.  10). The defendants subjected the plaintiff to a deprivation of rights secured by the Bill of Rights of the United States Constitution.

11).  The defendants violated clearly established law at the time regarding the Fourteenth Amendment, which stipulates that no state may deprive any person of life, liberty, or property without due process of law.

12). Consequently, Mr. Reynolds was deprived of his motorcycle and belongings without consent and without due process, as no warrants were issued prior to Bradley Spargur and  Robert Howell's decision to take Mr. Reynolds's property and retain possession of them for 209 days.also making Mr. Reynolds pay a hefty fee upon return of his damaged motorcycle and his personal belongings for the tow bill.

13). The "unknown" "SERGEANT" of Colorado State Patrol would assist in this process of the impoundment of the motorcycle and personal belongings, during the following morning 4-30-2024 in recorded phone calls, he was also made aware that he was being recorded but would not let Mr. Reynolds know where his motorcycle or belongings were located and advised Mr. Reynolds not to show up to Backwoods towing due to State Patrol having their own holding facilities and that the motorcycle was not at Backwoods Towing yard.

14).  Spargur remained committed to submitting an affidavit for a search warrant on April 30,2022, presenting the judge (Honorable Judge Plew)( *same Judge that signed the warrant)* with distorted statements as (a recorded video will show), Spargur was fully aware at this time that he had already impounded the motorcycle and Mr. Reynolds possessions, which

contradicted both State Patrol Policy and against Mr. Reynolds expressed wishes (illegally).  15). However, Spargur persisted in utilizing the judicial system in a manner that raises major concerns, rather than adhering to a more prudent and legal approach in the right to due process of Mr. Reynolds, showing intentional misuse of the Judicial system to try and obtain a conviction at whatever costs, even <u>falsifying testimony "under oath"</u> November 4th during the suppression hearing held by Honorable Judge Plewe.

16).The Judge limits their examination to the four corners of the affidavit:consequently, it is the responsibility of the officer to provide accurate information to the judge.

17).  As a result,by no fault of the Judge(Honorable Judge Plewe in this case) while the warrants and  subsequent arrest may have been valid on its face( due to the misconstrued statements), it does not imply that it was done in a legal way (as in this case the arrest was illegal) and the affidavit filed by Spargur should be tested, for there are several contradicting factors including video,and reports from other officers that will show the contradicting statements Spargur made and the illegal navigation he transpired in throughout this case taking advantage of the Judicial process.

18). The right to due process was purposely and recklessly violated in this case.


**Conclusion:**

 In conclusion, although Mr. Reynolds is not an attorney, he holds the belief that multiple laws and civil rights were infringed upon by several officers of the Colorado State Patrol during the extensive internal affairs investigation process and the prolonged traffic stop by Spargur and Howell.  He asserts that the impoundment of his motorcycle and belongings was executed through the use of force, by Bradley Spargur and Robert Howell along with ranking "Sergeant#6388"and other officers assisted throughout the incident. Furthermore, it has come to Mr. Reynolds's attention that other members of the Colorado State Patrol *( very highly ranked officers including Major Brett Williams)*  have acknowledged these violations, yet Mr.Reynolds is unaware of any disciplinary action taken against the involved officers Bradley Spargur or Robert Howell as both officers are still employed by Colorado State Patrol. This lack of accountability raises further concerns, particularly regarding potential deficiencies in training, as it appears that many Troopers have committed similar infractions, as indicated by rulings from the 10th Circuit in various cases similar to Mr.Reynolds' case. Additionally, the Attorney General's office has taken several months to engage in negotiations that have displayed a tendency toward bad faith, despite having initially signed an agreement to negotiate in good faith. Instead, their actions appear to have aimed at minimizing the officers' conduct, while also presenting offers and requesting that Mr. Reynolds respond by a predetermined date. This situation has illuminated the true nature of all parties involved, raising concerns about professionalism and accountability of The  Colorado State Patrol in response to their officers' unjust actions.


**WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in his favor and against the Defendants, and grant:**
**(a) Appropriate declaratory and other injunctive and/or equitable relief; (b) Compensatory and consequential damages, including damages for physical injuries and pain, emotional distress, loss of reputation, humiliation, loss of enjoyment of life, and other pain and**

**suffering on all claims allowed by law in an amount to be determined at trial;**
**(c) All economic losses on all claims allowed by law;**
**(d) Punitive damages on all claims allowed by law and in an amount to be determined at trial;**
**(e) The costs associated with this action, including those**
**associated with expert witness fees, on all claims allowed by law;**
**(f) Pre- and post-judgment interest at the lawful rate; and**
**(g) Any further relief that this court deems just and proper, and any other relief as allowed by law.**
**(h) A hearing: to address the and test the information provided by Spargur in the original Affidavit**

I declare under penalty of perjury that I am the plaintiff in this action, that I have read this complaint, and that the information in this complaint is true and correct. *See* 28 U.S.C. § 1746; 18 U.S.C. § 1621.

Under Federal Rule of Civil Procedure 11, by signing below, I also certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper  purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;  (2) is supported by existing law or by a nonfrivolous argument for extending or modifying  existing law; (3) the factual contentions have evidentiary support or, if specifically so identified,  will likely have evidentiary support after a reasonable opportunity for further investigation or  discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

*Christopher Reynolds*

(Signature)

*January 8, 2024*

(Date)

(Revised February 2022)

5