IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 24-cv-03605-RTG

CHRISTOPHER L. REYNOLDS,

Plaintiff,

v.

BRADLEY SPARGUR, COLORADO STATE PATROL TROOPER; AND
ROBERT HOWELL, COLORADO STATE PATROL TROOPER,

Defendants.

---

## SECOND AMENDED COMPLAINT AND JURY DEMAND

---

Plaintiff, Christopher L. Reynolds, by and through counsel, respectfully files the following Second Amended Complaint and Jury Demand:

### INTRODUCTION

1. On April 29, 2022, on the side of a moonlit road in rural Colorado, Defendants Spargur and Howell violated Mr. Reynolds United States and Colorado constitutional rights. Defendants Spargur and Howell seized Mr. Howell using excessive force, extended what was allegedly an extremely routine traffic stop without legal justification, searched Mr. Howell's motorcycle illegally, and seized Mr. Howell's motorcycle illegally.

2. Based on that illegal search and seizure, Defendants sought a search warrant and ultimately an arrest warrant which resulted in Mr. Reynolds spending over six months in jail on a charge that would never have been brought but for Defendant's unconstitutional actions.

3. A Colorado state court judge determined that Defendants' unlawfully seized and impounded Mr. Reynolds' motorcycle and suppressed all evidence resulting from that seizure. The case against Mr. Reynolds was dismissed. The case would never have been brought but for Defendants' unconstitutional actions.

4. The Colorado State Patrol (CSP) conducted an internal investigation into Defendants' actions and determined that Defendants violated CSP policy and Mr. Reynolds' constitutional rights.

5. This lawsuit follows. Mr. Reynolds is entitled to justice and a remedy for Defendants' intentional violations of his clearly established constitutional rights.

JURISDICTION AND VENUE

6. This action arises under the Constitution and laws of the United States, including Article III, Section 1 of the United States Constitution, and 42 U.S.C. § 1983 and 42 U.S.C. § 1988. The Jurisdiction of this Court is invoked pursuant to U.S.C. §§ 1331, 1343, and 2201. Supplemental jurisdiction over state law claims is conferred by 28 U.S.C. § 1367 because the violations of federal law alleged are substantial and the pendent causes of action derive from a common nucleus of operative facts.

7. Venue is proper in the District of Colorado pursuant to 28 U.S.C. § 1391(b). All the events alleged herein occurred in the State of Colorado, and all the individual parties were residents of and domiciled in the State of Colorado at the time of the events giving rise to this Complaint.

## PARTIES

8. Christopher Reynolds is the Plaintiff. At all relevant times Mr. Reynolds was a resident of Colorado and a citizen of the United States. Plaintiff Reynolds will be referred to as Plaintiff or Mr. Reynolds.

9. Defendant Spargur is, upon information and belief, a resident of Colorado and a citizen of the United States. At all relevant times, Defendant Spargur was employed by the Colorado State Patrol as a peace officer and was acting under the color of state law. Defendant Spargur is sued in his personal capacity.

10. Defendant Howell is, upon information and belief, a resident of Colorado and a citizen of the United States. At all relevant times, Defendant Howell was employed by the Colorado State Patrol as a peace officer and was acting under the color of state law. Defendant Howell is sued in his personal capacity.

## FACTUAL ALLEGATIONS

11. On April 29, 2022, Mr. Reynolds was driving his Harley Davison motorcycle from Grand Junction through Dolores County, Colorado.

12. Although the motorcycle belonged to his son, Mr. Reynolds lawfully possessed the motorcycle because his son had let him borrow the motorcycle. Mr. Reynolds had a constitutionally protected possessory and property interest in the motorcycle.

13. Defendants were working as peace officers with the Colorado State Patrol.

14. While Mr. Reynolds was traveling, Dolores County Sheriff's Office (DCSO) deputies were watching Mr. Reynolds. At some point the DCSO deputies called for Defendants to join them.

15. Defendants followed Mr. Reynolds. At approximately 11:00PM, Defendants made the decision to pull Mr. Reynolds over. Defendants turned their red and blue lights on and Mr. Reynolds immediately and properly pulled over to the side of the road and packed his motorcycle on the side of Highway 49 south of Dove Creek in Dolores County, Colorado.

16. Although this was ostensibly a simple traffic stop for a technical registration violation, failing to dim headlights, and having too many axillary headlamps, Defendants conducted a "felony traffic stop" which is a euphemism for using the threat of deadly force to violently separate Mr. Reynolds from his motorcycle.

17. Defendants lied and tried to justify their use of excessive force in seizing Mr. Reynolds by claiming that Mr. Reynolds had a "lengthy criminal history including felony convictions for drugs and weapons." In fact, Mr. Reynolds' entire criminal history consists of a 1998 misdemeanor assault juvenile adjudication, a 2000 petty offense disorderly conduct conviction, a 2019 drug felony possession of a controlled substance conviction (that actually should have become a misdemeanor pursuant to section 18-1.3-103.5, Colorado Revised Statutes), and a 2020 misdemeanor reckless endangerment conviction. In other words, Mr. Reynolds had a relatively minor criminal history and certainly not a lengthy felony history of drug and weapons offenses.

18. The truth is that Defendants' seizure of Mr. Reynolds had absolutely nothing to do with the minor traffic violations they claimed to see. Defendants wanted to seize Mr. Reynolds and search his motorcycle because they had a hunch that his motorcycle had drugs in it. Defendants had been contacted by a different law enforcement officer (Tom Quinnett of the Cortez Police Department) who told them that an unidentified informant had claimed that Mr. Reynolds was possibly transporting drugs and a firearm in the motorcycle. Mr. Quinett

told Defendants that he did not have probable cause to seize Mr. Reynolds or their motorcycle and that Defendants would need to develop their own probable cause.

19. After pulling Mr. Reynolds over for minor traffic violations and seizing him at gunpoint, Defendants searched Mr. Reynolds' person.

20. Defendants did not find any weapons, drugs, or other contraband on Mr. Reynolds person.

21. Defendants separated Mr. Reynolds from his motorcycle.

22. Defendants did not pursue their claimed for their stop (the minor traffic violations). Instead, Defendants began concocting a plan to do what they really wanted to do, search the motorcycle.

23. Defendants discussed with Mr. Reynolds his lights. Mr. Reynolds explained that he used the lights to watch out for deer on the dark highway, an entirely reasonable and safe thing to do.

24. Defendants did not ask Mr. Reynolds to dim his lights which he easily could have done.

25. Defendant Spargur told Mr. Reynolds that he was going to search the motorcycle for weapons.

26. Mr. Reynolds clearly objected to the search verbally.

27. Despite Mr. Reynolds' lack of consent, Defendant Spargur searched the motorcycle.

28. Defendant Spargur did not find any weapons or other contraband.

29. During all of this, Mr. Reynolds was standing on the side of the road with four armed peace officers shining flashlights at him. Mr. Reynolds posed no threat and never did anything to indicate he was a threat.

30. Despite this, Defendants claimed that they could search the motorcycle "to ensure there were no firearms available to [Mr. Reynolds}, should he choose to escalate."

31. After searching the motorcycle and finding nothing, Defendants decided to escalate and seize the motorcycle. Defendant Spargur directed Defendant Howell to request that a tow truck come to impound the motorcycle. Defendant Howell called for a tow truck to impound the motorcycle.

32. Defendants knew that they did not have probable cause the seize the motorcycle but did so anyway.

33. Neither Defendant Spargur nor Defendant Howell intervened to stop the unconstitutional seizure of the motorcycle.

34. Defendants told Mr. Reynolds that they were seizing his motorcycle because of the registration violation and bright lights.

35. Mr. Reynolds requested that instead of impounding his motorcycle for minor traffic offenses he be allowed to safely leave the motorcycle on the side of the highway and have someone come to pick it up. Defendant Spargur refused to allow this reasonable request.

36. Defendants knew that there was no community safety danger in allowing Mr. Reynolds to leave his motorcycle parked on the side of the road while waiting to have it picked up.

37. Defendants didn't care that there was no legitimate reason to seize Mr. Reynolds' motorcycle, they wanted to seize it so they could illegally search it.

38. Mr. Reynolds left after being told that his motorcycle was being seized and there was nothing he could do about it.

39. After Mr. Reynolds left, Defendants discussed whether they should search the motorcycle prior to towing it. Defendant Howell believed that they should seal the motorcycle and seize it pending a warrant.

40. However, Defendant Spargur decided to search the motorcycle without waiting for a warrant. Defendant Howell ultimately agreed with Defendant Spargur and assisted in the sarch.

41. During this unconstitutional search, Defendant Spargur felt a cylindrical object in a locked back in the left saddle bag.

42. Defendants did not find any guns, drugs, or other contraband or evidence of a crime during this illegal search.

43. On April 30, 2022, Defendant Spargur authored a search warrant in which he presented false information to the court. On the basis of that affidavit which contained untrue and incomplete information, a search warrant was issued by a state court judge.

44. During the subsequent search, a handgun and some drugs were located in the motorcycle's saddlebags.

45. Based on this discovery, Defendant Spargur authored an arrest warrant affidavit for Mr. Reynolds. The warrant was issued by a state court judge and Mr. Reynolds was arrested. Mr. Reynolds was then held in custody for over six months because of the charges that Defendants set into motion.

46. Mr. Reynolds filed a motion to suppress the evidence that Defendants obtained during the search of his motorcycle.

47. The state court judge heard Mr. Reynolds' motion. The state court judge ruled that Defendants violated Mr. Reynolds' constitutional rights when they seized the motorcycle. The state court judge suppressed everything that was found. The prosecution then dismissed the case.

48. Subsequently, the Colorado State Patrol conducted an internal investigation of Defendants' actions. Regarding Defendant Spargur, the CSP found:

a) Sergeant Spargur did not meet the elements defined as probable cause for the contact in regards to the mounted lights to the front of the motorcycle. He had ample opportunity to clarify Colorado State Statutes in regards to the number and style of allowed lights described.

b) Sergeant Spargur and Trooper Robert Howell did have probable cause to stop the vehicle based on the color mis-match as they were aware of the registered color of the motorcycle prior to the stop, and identified the motorcycle as a different color. *Colorado Revised Statutes 42-3-126(1) If the primary body color of a motor vehicle is subsequently changed from the primary body color that is identified in the application for registration for the motor vehicle, the owner of the motor vehicle shall notify the department in writing, within thirty days after the color of such motor vehicle is changed, of the new primary body color of the motor vehicle. The primary body color of a motor vehicle shall be identified using the standard color descriptions of the department that are established pursuant to section 42-3-105 (1)(e). (2) Any person who violates subsection (1) of this section commits a class B traffic infraction.*

c) Sergeant Spargur used the registration violation as an attempt to gain access to the saddle bags of the motorcycle and made repeat statements with the complainant about the need to tow the motorcycle if the registration card could not be found. Sergeant Spargur did not have evidence that the motorcycle was stolen because the motorcycle came back clear through dispatch and the registered owners last name was the same as the complainants. Sergeant Spargur did not allow the complainant to

leave the motorcycle on the roadside. It is my determination this was done to unduly influence the complainant to allow Sergeant Spargur access to the motorcycle.

d)  Sergeant Spargur was in violation of the Colorado State Patrol Policies and Procedures in regards to legal authority to tow and impound this motorcycle for the lights and registration violations. This is a violation of Colorado State Patrol Policies and Procedures 4.01.0403(4), because the lights and registration violations do not constitute grounds to tow a vehicle. Sergeant Spargur had the opportunity to clarify department policies prior to deciding to impound the complainant's motorcycle. Sergeant Spargur has signed off on this specific policy through the Colorado State Patrols internal policy issuance and tracking systems prior to this contact. The tow of the motorcycle appeared centered around the desire to search this motorcycle for the reported narcotics.

e)  Sergeant Spargur's tow, impound and subsequent search of this vehicle were in violation of Colorado State Patrol Policies and Procedures 4.01.0304(A)(4)(a), *A trooper shall not tow a vehicle for being in violation of registration, driver's license or inspection laws.* . . . Sergeant Spargur maintains that he towed the motorcycle specifically for the light and registration "violations". He maintains there was no other reason for towing the motorcycle. Towing the motorcycle was therefore an unlawful search and seizure, in violation of the Fourth Amendment.

f)  The subsequent arrest warrant for the complainant based off the Fourth Amendment violation by Sergeant Spargur was not valid under the Fruit of the Poisonous Tree Doctrine, because the evidence against the complainant was obtained through an unlawful seizure of the motorcycle. The motorcycle was towed

and impounded not complying with department policies or standard practices. Had the motorcycle not been impounded the narcotics or the weapon would not have been located. Therefore, there would likely have not been a basis for the warrant for the arrest of Mr. Reynolds.

g) Without the elements gained in the unlawful search and seizure of the motorcycle, there most likely would have been no probable cause for the issuance of an affidavit for the arrest warrant completed by Sergeant Spargur and provided to the District Court for the issuance of the final arrest warrant for the complainant. The District Court ruled in this matter at the hearing on the complainant's motion to suppress and found that the search of the motorcycle was unlawful. As a result, all evidence against the complainant was suppressed.

6.    Regarding Defendant Howell, the CSP found:

a) The judge in the case ruled, and the defense agreed, that the initial traffic stop and pat down of the complainant were valid.

b) Spargur and Howell discussed the registration violation and used it to attempt to gain access to search the motorcycle. Spargur indicated they would have to tow the motorcycle if the complainant could not locate the registration. Neither Spargur, nor Howell, thought that the motorcycle was stolen, which alleviated the need to tow it to confirm the motorcycle's true identity and owner.

c) Towing a vehicle for registration violations violates Colorado State Patrol policy 4.01.0403 unless it falls under the "Community Caretaking Function," which this did not. In addition, the Colorado Supreme Court has ruled that the seizure of vehicles by the police for caretaking purposes, including the inventory of the lawfully seized

vehicle, can be reasonable under the Fourth Amendment, even without probable cause and a warrant, if conducted for administrative "community caretaking functions" rather than for the purpose of conducting a criminal investigation."

d) However, this seizure and inventory was clearly done for the purpose of conducting a criminal investigation. A secondary reason given for impounding the motorcycle was due to the lights to the front being unsafe. However, neither Spargur, nor Howell, made any attempt to discern whether the lights were actually in violation or if they could be made safe, which would have allowed it to travel safely and lawfully down the road.

e) At some point, Quinnett informed Spargur that the informant would not testify, and that they would need to develop their own probable cause for the stop and search. Therefore, the information was only hearsay and could not be used as the basis for probable cause to seize the motorcycle and apply for a search warrant.

f) Howell contends that he was unaware that the informant would not testify, so he was operating under the assumption that they had reasonable articulable suspicion that a crime had been committed at the onset, and that with what they learned and observed prior to and during the contact that they would be able to apply for a probable cause search warrant.

g) This argument is not persuasive, as he had a duty to know what information was known or not known. Therefore, there were no justifiable grounds on which to impound the motorcycle.

h) It follows that the inventory search of the motorcycle was also not justified. Howell did state that they should seal the motorcycle and apply for a search warrant.

However, he then agreed with Spargur that an inventory should be conducted and watched and wrote down items from that inventory on the CSP 80.

    i)  The improper inventory then led to the search warrant and arrest warrant being obtained unreasonably, which led to the suppression of the gun and drugs and eventual dismissal of charges.

49. Mr. Reynolds seeks damages for the blatant violations of his state and federal constitutional rights that foreseeably resulted in nearly seven months of unjustified and harrowing jail time away from his wife, children, and loved ones.

### STATEMENT OF CLAIMS FOR RELIEF

**FIRST CLAIM FOR RELIEF**
**42 U.S.C. § 1983 – Violation of Fourth Amendment – Unlawful Seizure**
**(Against all Defendants)**

50. Plaintiff hereby incorporates all other paragraphs in this Complaint as if fully set forth herein.

51. During all relevant times, Defendants acted under color of state law and within the course and scope of their employment as peace officers with the Colorado State Patrol.

52. Plaintiff had a protected interest under the Fourth Amendment to the United States Constitution in being secure in his personal property, including his motorcycle, from unreasonable seizures by law enforcement personnel.

53. Defendants, acting in concert with one another, unreasonably seized and took possession of Plaintiff's motorcycle, in violation of the Fourth Amendment.

54. Defendants did not have probable cause or reasonable suspicion, or any other legally valid basis, to believe that Plaintiff had committed, was committing, or was about to commit any violation of the law.

55. Defendants did not have any reasonable belief that Plaintiff's motorcycle presented a 13legitimate safety threat.

56. Defendants did not have probable cause or reasonable suspicion, or any other legally valid basis, to believe that Plaintiff's motorcycle had contents that were illegal.

57. Defendants could not have lawfully impounded Plaintiff's motorcycle pursuant to Defendant's legitimate community caretaking function.

58. Defendant's sole reason for seizing the motorcycle was to search it.

59. Defendants did not have a warrant to seize or search the motorcycle.

60. Plaintiff did not consent to Defendants' seizing his motorcycle.

61. Defendants seized Plaintiff's motorcycle against his will, despite lacking any legally valid basis for the seizure.

62. Defendants violated Plaintiff's federal constitutional rights by engaging in an unlawful seizure of Plaintiff's motorcycle that was objectively unjustified in light of the facts and circumstances confronting Defendants before and during their encounter with Plaintiff.

63. Defendants engaged in a collective plan or effort to seize Plaintiff's motorcycle without probable cause, reasonable suspicion, or another valid legal basis or, alternatively, each Defendant failed to take reasonable steps to intervene in the other Defendant's unlawful seizure of Plaintiff's motorcycle, despite being in a position and having the opportunity to do so.

64. Each Defendant is therefore liable for the damages resulting from the objectively unlawful

and unjustified seizure of Plaintiff's motorcycle. Those damages include but are not limited to the reasonably foreseeable effects stemming from illegally seizing his motorcycle, including damages surrounding Plaintiff being forced to spend 188 days in jail because Defendants illegally seized his motorcycle.

65. Defendants subjected or caused Plaintiff to be subjected to the deprivation of individual rights secured by the bill of rights of the United States Constitution.

66. Defendants violated clearly established law at the time about which every reasonable officer would have known.

67. The acts or omissions of the Defendants were the moving force behind, and the proximate cause of, injuries sustained by Plaintiff.

68. Defendants' conduct described herein was attended by circumstances of malice, or willful and wanton conduct, which the Defendants must have realized was dangerous, or that was done heedlessly and recklessly, without regard to the consequences, or of the rights and safety of others, particularly Plaintiff.

### SECOND CLAIM FOR RELIEF
### Colo. Rev. Stat. § 13-21-131 – Violation of Colo. Const. Art. II, Section 7 – Unlawful Seizure (Against All Defendants)

69. Plaintiff hereby incorporates all other paragraphs of this Complaint as if fully set forth herein.

70. The Defendants acted under color of state law and within the course and scope of their employment as CSP troopers at all times relevant to the allegations in this Complaint.

71. At all relevant times, the Defendants were "peace officers" under Colo. Rev. Stat. § 24-31-901(3) and were employed by the CSP.

72. Plaintiff had a protected interest under the Colorado Constitution, article II, §7 in being

secure in his personal property, including his motorcycle, from unreasonable seizures by law enforcement personnel.

73. Defendants, acting in concert with one another, unreasonably seized and took possession of Plaintiff's motorcycle that he had been driving, in violation of the Constitution of the State of Colorado.

74. Defendants did not at any relevant time have probable cause or reasonable suspicion, or any other legally valid basis, to believe that Plaintiff had committed, was committing, or was about to commit any violation of the law.

75. Defendants did not at any relevant time have probable cause or reasonable suspicion, or any other legally valid basis, to believe that Plaintiff's motorcycle had contents that were illegal.

76. Defendants did not at relevant time have a reasonable belief that Plaintiff's motorcycle presented a legitimate safety threat.

77. The motorcycle could not have been lawfully impounded pursuant to Defendants' legitimate community caretaking function.

78. Defendants' sole reason for impounding the motorcycle was to search it.

79. Defendants did not at any relevant time have a warrant authorizing any seizure of Plaintiff's motorcycle.

80. Defendants seized Plaintiff's motorcycle against his will, despite lacking any legally valid basis for the seizure.

81. Defendants violated Plaintiff's state constitutional rights by engaging in an unlawful seizure of Plaintiff's motorcycle that was objectively unjustified in light of the facts and circumstances confronting Defendants before and during their encounter with Plaintiff.

82. Defendants engaged in a collective plan or effort to seize Plaintiff's motorcycle without

probable cause, reasonable suspicion, or another valid legal basis or, alternatively, each Defendant failed to take reasonable steps to intervene in the other Defendant's unlawful seizure of Plaintiff's motorcycle, despite being in a position and having the opportunity to do so.

83. Each Defendant is therefore liable for the damages resulting from the objectively unlawful and unjustified seizure of Plaintiff's motorcycle. Those damages include but are not limited to the reasonably foreseeable effects stemming from illegally seizing his motorcycle, including damages surrounding Plaintiff being forced to spend 188 days in jail because Defendants illegally seized his motorcycle.

84. Defendants subjected or caused Plaintiff to be subjected to the deprivation of individual rights secured by the bill of rights of the Colorado Constitution.

85. The acts or omissions of the Defendants were the moving force behind, and the proximate cause of, injuries sustained by Plaintiff.

86. Defendants' conduct described herein was attended by circumstances of malice, or willful and wanton conduct, which the Defendants must have realized was dangerous, or that was done heedlessly and recklessly, without regard to the consequences, or of the rights and safety of others, particularly Plaintiff.

### THIRD CLAIM FOR RELIEF
### Violation of 42 U.S.C. § 1983 – 4th Amendment
### Unconstitutional Search
### (All Defendants)

87. Plaintiff incorporates all other paragraphs as if fully set forth herein.

88. At all times relevant to this complaint, Defendants acted under color of state law and within the course and scope of their employment as peace officers with the Colorado State Patrol.

89. Plaintiff had a protected interest under the Fourth Amendment to the United States Constitution in his effects, including his motorcycle and bags from unreasonable searches by law enforcement personnel.

90. Defendants, acting in concert with one another, unreasonably searched Plaintiff's motorcycle and bags in violation of the Fourth Amendment.

91. Defendants did not have a warrant to search Plaintiff's motorcycle and bags.

92. Plaintiff did not consent to a search of his motorcycle and bags.

93. Defendants violated Plaintiff's federal constitutional rights by engaging in an unlawful search of Plaintiff's motorcycle and bags that was objectively unjustified in light of the facts and circumstances confronting Defendants.

94. Defendants engaged in a collective plan or effort to search Plaintiff's motorcycle and bags without a warrant or another valid legal basis or, alternatively, each Defendant failed to take reasonable steps to intervene in the other Defendant's unlawful search of Plaintiff's motorcycle and bags, despite being in a position and having the opportunity to do so.

### FOURTH CLAIM FOR RELIEF
### Colo. Rev. Stat. § 13-21-131 – Violation of Colo. Const. Art. II, Section 7 – Unlawful Search (Against All Defendants)

95. Plaintiff hereby incorporates all other paragraphs of this Complaint as if fully set forth herein.

96. The Defendants acted under color of state law and within the course and scope of their employment as CSP troopers at all times relevant to the allegations in this Complaint.

97. At all relevant times, the Defendants were "peace officers" under Colo. Rev. Stat. § 24-31-901(3) and were employed by the CSP.

98. Plaintiff had a protected interest under the Colorado Constitution, article II, §7 in being

secure in his personal property, including his motorcycle and bags, from unreasonable searches by law enforcement personnel.

99. Defendants, acting in concert with one another, unreasonably searched Plaintiff's motorcycle and bags, in violation of the Constitution of the State of Colorado.

100. Defendants did not at any relevant time have probable cause or reasonable suspicion, or any other legally valid basis, to believe that Plaintiff had committed, was committing, or was about to commit any violation of the law.

101. Defendants did not at any relevant time have probable cause or reasonable suspicion, or any other legally valid basis, to believe that Plaintiff's motorcycle or bags had contents that were illegal.

102. Defendants did not at any relevant time have a warrant authorizing any search of Plaintiff's motorcycle or bags.

103. Defendants searched Plaintiff's motorcycle against his will, despite lacking any legally valid basis for the seizure.

104. Defendants violated Plaintiff's state constitutional rights by engaging in an unlawful searches of Plaintiff's motorcycle and bags that was objectively unjustified in light of the facts and circumstances confronting Defendants before and during their encounter with Plaintiff.

105. Defendants engaged in a collective plan or effort to search Plaintiff's motorcycle and bags without probable cause, reasonable suspicion, or another valid legal basis or, alternatively, each Defendant failed to take reasonable steps to intervene in the other Defendant's unlawful search of Plaintiff's motorcycle and bags, despite being in a position and having the opportunity to do so.

106. Each Defendant is therefore liable for the damages resulting from the objectively unlawful

and unjustified search of Plaintiff's motorcycle and bags. Those damages include but are not limited to the reasonably foreseeable effects stemming from illegally searches his motorcycle, including damages surrounding Plaintiff being forced to spend 188 days in jail because Defendants illegally searched his motorcycle.

107. Defendants subjected or caused Plaintiff to be subjected to the deprivation of individual rights secured by the bill of rights of the Colorado Constitution.

108. The acts or omissions of the Defendants were the moving force behind, and the proximate cause of, injuries sustained by Plaintiff.

109. Defendants' conduct described herein was attended by circumstances of malice, or willful and wanton conduct, which the Defendants must have realized was dangerous, or that was done heedlessly and recklessly, without regard to the consequences, or of the rights and safety of others, particularly Plaintiff.

### PRAYER FOR RELIEF

THEREFORE, Plaintiff respectfully requests that this Court enter judgment in his favor and against Defendants, and award her all relief as allowed by law and equity, including but not limited to:

a. A judgment that the acts of Defendants described herein violated the United States and Colorado constitutions;

b. Injunctive relief, as appropriate;

c. Compensatory damages according to proof at trial, including but not limited to those for past and future pecuniary and non-pecuniary losses, physical and mental pain, emotional

distress, humiliation, fear, anxiety, loss of enjoyment of life, loss of liberty, privacy, and sense of security and individual dignity, and other non-pecuniary losses;

d.  Punitive or exemplary damages for all claims as allowed by law in an amount to be determined at trial;

e.  Attorney's fees and costs;

f.  Pre-judgment and post-judgment interest at the highest possible rate; and

g.  Such further relief as the Court may deem just, proper, and appropriate.

**PLAINTIFF DEMANDS A JURY TRIAL ON ALL ISSUES SO TRIABLE.**

Dated: February 28, 2025

/s/ Jason M. Kosloski
Jason M. Kosloski (CO Bar # 50214)
KOSLOSKI LAW, PLLC
1312 17th Street, Unit #2779
Denver, CO 80202
(720) 605-6487
jkosloski@kosloskilaw.com
*Attorneys for Plaintiff Christopher L. Reynolds*

**CERTIFICATE OF SERVICE**

I hereby certify that on February 28, 2025, the foregoing **SECOND AMENDED COMPLAINT AND JURY DEMAND** was filed using the CM/ECF e-filing system, which sends notice to the following:

> Andrew D. Ringel
> Hall & Evans, L.L.C.
> 1001 17th Street, Suite 300
> Denver, Colorado 80202
> Tel: (303) 628-3300
> Fax: (303) 628-3368
> ringela@hallevans.com
> *Attorney for Defendant Spargur*
>
> Scott Neckers
> Overturf McGath & Hull, P.C.
> 625 E 16th Ave.
> Denver, Colorado 80203
> Tel: (303) 866-9484
> san@omhlaw.com
> *Attorney for Defendant Howell*

/s/ Jason Kosloski
Jason Kosloski