IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 24-cv-03605-PAB-NRN

CHRISTOPHER LEE REYNOLDS

    Plaintiff,

v.

BRADLEY SPARGUR, Colorado State Patrol Trooper
ROBERT HOWELL, Colorado State Patrol Trooper

    Defendants.
_____

**DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**
_____

Defendants, by and through their undersigned counsel, pursuant to Fed. R. Civ. P. 56, respectfully submit this Motion for Summary Judgment, as follows:

**I.   INTRODUCTION**

Plaintiff Christopher L. Reynolds ("Plaintiff") sues Defendants Bradley Spargur and Robert Howell ("Defendants") for violations of his constitutional rights arising from a stop, seizure, and arrest on April 29, 2022, they performed as Colorado State Patrol Troopers. Plaintiff's Second Amended Complaint and Jury Demand attempts the following claims: (1) violations of the Fourth Amendment pursuant to 42 U.S.C. § 1983 for seizing the Plaintiff's motorcycle; (2) violations of Colo. Const. Art. II, § 7 pursuant to C.R.S. § 13-21-131 for seizing the motorcycle; (3) violations of the Fourth Amendment pursuant to 42

U.S.C. § 1983 for searching the motorcycle; and (4) violations of Colo. Const. Art. II, § 7 pursuant to C.R.S. § 13-21-131 for searching the motorcycle.

Defendants are entitled to summary judgment on Plaintiff's claims. Plaintiff's claims are barred by the two-year statute of limitations. Plaintiff did not timely file his claims under either the statute of limitations or the tolling agreement entered by the parties.

## II.   STATEMENT OF UNDISPUTED MATERIAL FACTS ("SUMF")

1. Plaintiff was riding a Harley Davidson motorcycle on Highway 491 in Dolores County on April 29, 2022. (ECF 19, ¶ 11.)

2. Defendants were Colorado State Patrol Troopers. (*Id.* at ¶ 13.)

3. Dolores County Sheriff's Office deputies who were surveilling Plaintiff as he was riding his motorcycle contacted Defendants and requested they join them during their surveillance. (*Id.* at ¶ 14.)

4. Defendants stopped Plaintiff at approximately 11:00 p.m. on April 29, 2022, on the side of the Highway 48 south of Dove Creek. (*Id.* at ¶¶ 15-16.)

5. Defendants impounded the motorcycle following the stop. (*Id.* at ¶ 31.)

6. Defendants performed an inventory search of the motorcycle. Defendant Spargur described what he discovered during the inventory search as follows:

> A brief inventory search was conducted and in the left saddlebag was a large duffle style bag that zipped from the top. The zippers were connected with a combination lock. The bag was lifted to clear underneath it. Your affiant could plainly feel a long, hard cylindrical object, which could easily (sic) the barrel of a gun. . . .

(*See* Arrest Warrant Affidavit, ¶ 10, **Exhibit A**).

7. On April 30, 2022, Defendant Spargur submitted a Search Warrant Affidavit to search the motorcycle. (*See*, **Exhibit A,** ¶ 11).

8. The State Court issued the search warrant. [*See* Id.].

9. The search resulted in finding the following: (a) 52 grams of methamphetamine in a clear plastic baggy; (b) 93 grams of methamphetamine in a clear baggy; and (c) a Smith & Wesson BodyGuard 380 pistol with extended magazine and 9 rounds of ammo resulting in Defendant Spargur submitting an Affidavit for Arrest Warrant for the Plaintiff. (*See* **Exhibit A**).

10. The State court issued the arrest warrant on May 5, 2022, for the following charges: (a) possession of a Schedule II Controlled Substance with Intent > 112 grams in violation of C.R.S. § 18-18-405(2)(a)(1)(C); (b) possessed within his or her immediate reach, a deadly weapon in commission of a felony in violation of C.R.S. § 18-18-407(1)(D)(1); (c) possession of drug paraphernalia in violation of C.R.S. § 18-18-428; and (d) possession of weapons by a previous offender in violation of C.R.S. § 18-12-108. (*See* **Exhibit A**, pages 6-7).

11. Plaintiff was arrested on or about May 5, 2022, and held in custody for approximately six months. (ECF 19, at ¶ 45.)

12. The State Court determined the stop of the motorcycle violated the Fourth Amendment and suppressed all the evidence obtained from the search of the duffle based on the exclusionary rule and the fruit of the poisonous tree doctrine. (*Id.* at ¶ 47.)[1]

13. The prosecution dismissed its case against Plaintiff. (*Id.* at ¶ 47.)

14. Plaintiff retained Michael J. Fairhurst, Esq. from Kilmer Lane, LLP to represent him in asserting civil claims against Defendants. (*See* **Exhibit B** – Tolling Agreement.)

15. Through their respective attorneys, Plaintiff and Defendants entered into a Tolling Agreement on April 24, 2024 (the "Tolling Agreement"). (*Id.*)

16. The Tolling Agreement provides the following regarding the term of the tolling period and the deadline to file a lawsuit: "This equitable Tolling Agreement is to run for the period between the date of this letter up to and including 30 days after any party gives written notice that the agreement is terminated." (*Id.*)

17. Defendants agreed to "voluntarily waive the defense of timeliness or statute of limitations if litigation is filed after April 26, 2024, <u>but within the time period of tolling as described in this agreement.</u>" (*Id.* (emphasis added).)

18. Under the Tolling Agreement, Plaintiff had 30 days after the date that the Tolling Agreement was terminated to bring an action against Defendants. (*Id.*)

---

[1] Defendants note the fruit of the poisonous tree doctrine is not applicable to civil cases. *See, e.g., Estate of Taylor v. Salt Lake City,* 16 F.4th 744, 754-55 (10th Cir. 2021); *Shaw v. Schulte,* 36 F.4th 1006, 1017 (10th Cir. 2022).

19. The Tolling Agreement did not include any other provisions to extend the statute of limitations past 30 days from the date of the termination of the Tolling Agreement. (*See id.*)

20. Plaintiff's former attorneys at Kilmer Lane LLP drafted the Tolling Agreement and undersigned counsel signed the Agreement. (**Exhibit C -** Affidavit of Scott Neckers).

21. On October 31, 2024, Mr. Fairhurst informed Plaintiff his firm "decided to terminate our representation of you." (**Exhibit D** - Fairhurst Email dated October 31, 2024**).**

22. Mr. Fairhurst informed Plaintiff once the tolling agreement was terminated, "you will only have 30 days to file suit before the statute of limitations passes." (Id.).

23. On November 1, 2024, Mr. Fairhurst informed counsel for Defendants that Plaintiff terminated the Tolling Agreement. (**Exhibit E** – Fairhurst Email dated November 1, 2024.)

24. On November 6, 2024, Plaintiff also informed counsel for Defendants he was no longer represented by Kilmer Lane and would be proceeding *pro se.* (**Exhibit F** – Plaintiff Email dated November 6, 2024.)

25. On November 26, 2024, Plaintiff sent counsel an email in which he again indicated his intent to terminate the Tolling Agreement. (**Exhibit G** – Plaintiff Email Terminating Tolling Agreement dated November 26, 2024.)

26. Plaintiff filed his original Complaint on December 30, 2024 (ECF 1).

5

### III. PLAINTIFF FILED HIS COMPLAINT OUTSIDE THE STATUTE OF LIMITATIONS AND THEREFORE HIS CLAIMS ARE BARRED

#### A. Plaintiff's Claims Accrued on April 29, 2022 When He Was Pulled Over, Which Started the Running of the Two-Year Statute of Limitations

Plaintiff alleges Defendants unconstitutionally stopped him and searched the motorcycle he was riding on April 29, 2022. Plaintiff also alleges Defendants then unconstitutionally searched the motorcycle a second time on April 30, 2022. Accordingly, Plaintiff's claims accrued at the time the alleged constitutional violations by Defendants took place on April 29 and 30, 2022. *See Graham v. Taylor*, 640 Fed. Appx. 766, 768–69 (10th Cir. 2016) ("A civil rights action accrues when facts that would support a cause of action are or should be apparent."); *Onyx Properties LLC v. Bd. of Cnty. Comm'rs of Elbert Cnty.*, 868 F. Supp. 2d 1171, 1174 (D. Colo. 2012) (noting the accrual date is when a plaintiff knew or should have known that their constitutional rights were violated).

The statute of limitations for 42 U.S.C. § 1983 actions is borrowed from state statute. *Graham*, 640 Fed. Appx. at 768 (citing *Mondragón v. Thompson*, 519 F.3d 1078, 1082 (10th Cir. 2008)); s*ee also Hardin v. Straub*, 490 U.S. 536, 539, 109 S.Ct. 1998, (1989) ("limitations periods in § 1983 claims are to be determined by reference to the appropriate state statute of limitations"). In Colorado, C.R.S. § 13-21-131 provides a "civil action pursuant to this section must be commenced within two years after the cause of action accrues." C.R.S. § 13-21-131(5). *See also Hunt v. Bennett*, 17 F.3d 1263, 1265-66 (10th Cir. 1994) (applying Colorado's two-year personal injury statute of limitations to § 1983 claims). Accordingly, the statute of limitations for Plaintiff's claims against

Defendants would have expired two years later on April 29 and 30, 2024, absent the Tolling Agreement entered into by the parties.

### B. According to the Terms of the Tolling Agreement, Plaintiff Had 30 Days to File His Complaint Once He Terminated the Tolling Agreement and His Failure to File Within 30 Days Bars His Claims Against Defendants

The Tenth Circuit has held under Colorado law, a court must construe the language of a contract to ascertain and effectuate the intent of the parties. *Gol TV, Inc. v. EchoStar Satellite Corp.*, 692 F.3d 1052, 1055 (10th Cir. 2012) (applying Colorado law). "To determine the intent of the parties, the court should give effect to the plain and generally accepted meaning of the contractual language." *Id.* (quoting *Copper Mountain, Inc. v. Indus. Sys., Inc.*, 208 P.3d 692, 697 (Colo. 2009)) (quotations omitted). The Tolling Agreement is a contract between Plaintiff and Defendants, and must be interpreted according to these contract principles.

When the terms of an agreement are ambiguous, the court may consider extrinsic evidence of the party's intent. *Level 3 Commc'ns, LLC v. Liebert Corp.*, 535 F.3d 1146, 1154–55 (10th Cir. 2008); *E. Ridge of Fort Collins, LLC v. Larimer & Weld Irr. Co.*, 109 P.3d 969, 974 (Colo. 2005) ("our courts no longer apply a rigid 'four corners' rule"). However, "ambiguity must appear in the four corners of the document <u>before</u> extrinsic evidence can be considered"; "extrinsic evidence cannot create ambiguity." *Am. Fam. Mut. Ins. Co. v. Hansen*, 375 P.3d 115, 117 (Colo. 2016) (emphasis added).

The terms of the Tolling Agreement are unambiguous[2]. It provides the tolling period was intended "to run between the date of this letter up to and including 30 days after any party gives written notice that the agreement is terminated." SUMF ¶ 16. Additionally, Defendants agreed not to raise the affirmative defenses of waiver or statute of limitations if litigation was filed "within the time period of tolling as described" in the Tolling Agreement. SUMF ¶ 17. This language shows the parties intended to create a 30-day window in which Plaintiff could file his lawsuit after a party terminated the Tolling Agreement. Moreover, the 30-day deadline provided a significant benefit to Plaintiff. The parties executed the Tolling Agreement on April 24, 2024, which suspended the statute of limitations just five days before it expired.

Thus, the terms of the Tolling Agreement required Plaintiff to file his lawsuit within 30 days of the termination of the Tolling Agreement, or his claims would be barred by the statute of limitations.

Plaintiff first terminated the Tolling Agreement on November 1, 2024, when Mr. Fairhurst emailed counsel as follows: "I am writing to inform you that Mr. Reynolds is terminating his Tolling Agreement that is currently operative in the above referenced case [*Reynolds v. Spargur, et al.*], effective immediately." SUMF ¶ 23. Accordingly, Plaintiff had

---

[2] Even if this Court determines the language in the Tolling Agreement is ambiguous, because Plaintiff's former counsel drafted the Tolling Agreement (SUMF ¶ 21), any ambiguity must be construed against Plaintiff. *Mastrobuono v. Shearson Lehman Hutton, Inc.,* 514 U.S. 52, 62 (1995) ("respondents cannot overcome the common-law rule of contract interpretation that a court should construe ambiguous language against the interest of the party that drafted it").

8

until December 1, 2024, to file his Complaint. Plaintiff failed to do so, instead waiting until December 30, 2024 to file his Complaint.

Even if Plaintiff's November 1, 2024, termination through Mr. Fairhurst is not deemed effective, Plaintiff again indicated his intent to terminate the Tolling Agreement on November 26, 2024, himself. SUMF ¶ 25.

After proceeding *pro se* for several weeks, Plaintiff emailed the Colorado Attorney General's office, claiming he was again terminating the Tolling Agreement. SUMF ¶ 26. Plaintiff stated as follows: "I obviously need to let you know at this time that any agreement that was signed, is no longer in effect as of today, November 26th. ( 30 day advisement in writing) (personally). For the tolling agreement was a contract of "good faith" negotiations, but was used for time to minimize your clients actions." SUMF ¶ 25. Even assuming Plaintiff's counsel's initial termination of the Tolling Agreement was not effective, Plaintiff still missed his deadline to file his Complaint by four days. Based on the November 26, 2024, second termination of the Tolling Agreement, Plaintiff needed to file his Complaint no later than December 26, 2024. Instead, he waited until December 30, 2024, which is untimely. As such, Plaintiff's claims for relief should be dismissed with prejudice.

## IV.   CONCLUSION

In conclusion, for all the foregoing reasons, Defendants Bradley Spargur and Robert Howell respectfully request this Court grant them summary judgment, dismiss all of Plaintiff's claims against them with prejudice, and for all other and further relief as this Court deems just and appropriate.

DATED this 3rd day of July 2025.

Respectfully submitted,

**OVERTURF McGATH & HULL, P.C.**

By  *s/ Scott A. Neckers*
Scott A. Neckers
Sarah A. Thomas
Overturf McGath & Hull, P.C.
625 East Sixteenth Avenue, Suite 100
Denver, Colorado 80203
Tel: (303)860-2848
Fax: (303) 860-2869
san@omhlaw.com
sat@omhlaw.com
*Attorneys for Defendant Robert Howell*

*and*

By  *s/ Andrew D. Ringel*
Andrew D. Ringel
Hall & Evans, L.L.C.
1001 17th Street, Suite 300
Denver, Colorado 80202
Tel: (303) 628-3300
Fax: (303) 628-3368
ringela@hallevans.com
*Attorneys for Defendant Bradley Spargur*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on July 3, 2025, I electronically filed the foregoing **DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** with the Clerk of Court using the CM/ECF system with service as follows:

Jason M. Kosloski
Kosloski Law, PLLC
1401 Lawrence Street, Suite 1600
Denver, CO 80202
(720) 605-6487
jkosloski@kosloskilaw.com
*Attorney for Plaintiff*

Andrew D. Ringel
Hall & Evans, L.L.C.
1001 17th Street, Suite 300
Denver, CO 80202
(303) 628-3300
ringela@hallevans.com
*Attorney for Defendant Bradley Spargur*

*s/Jessica Pringle*