IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Philip A. Brimmer**

Civil Action No. 24-cv-03605-PAB-NRN

CHRISTOPHER LEE REYNOLDS,

    Plaintiff,

v.

BRADLEY SPARGUR, Colorado state patrol trooper, and
ROBERT HOWELL, Colorado state patrol trooper,

    Defendants.

---

## ORDER

---

This matter comes before the Court on Defendants' Motion for Summary Judgment [Docket No. 33]. The Court has jurisdiction pursuant to 28 U.S.C. § 1331. The facts are essentially undisputed. The legal issue is whether plaintiff's claims are barred by the statute of limitations.

### I. UNDISPUTED FACTS[1]

On April 29, 2022, Mr. Reynolds was riding a motorcycle on Highway 491 in Dolores County. Docket No. 33 at 2, ¶ 1. Sergeant Spargur and Trooper Howell stopped Mr. Reynolds at approximately 11:00 p.m. on Highway 48. *Id.*, ¶¶ 2, 4. Sergeant Spargur and Trooper Howell impounded the motorcycle following the stop. *Id.*, ¶ 5. Sergeant Spargur sought and obtained a search warrant for the motorcycle. *Id.* at 3, ¶¶ 7, 8. The search revealed a clear plastic bag containing 52 grams of

---

[1] The following facts are undisputed unless otherwise noted.

methamphetamine, another clear plastic bag containing 93 grams of methamphetamine, and a Smith & Wesson Bodyguard .380 pistol with an extended magazine and nine rounds of ammunition. *Id.*, ¶ 9. Mr. Reynolds was arrested pursuant to a warrant on or about May 5, 2022. *Id.*, ¶¶ 10-11.

A state court determined that the stop of the motorcycle violated the Fourth Amendment and suppressed all the evidence obtained from the search. *Id.* at 4, ¶ 12. The prosecution then dismissed its case against Mr. Reynolds. *Id.*, ¶ 13. Mr. Reynolds retained attorney Michael J. Fairhurst of Kilmer Lane LLP to represent him in asserting civil claims against Sergeant Spargur and Trooper Howell. *Id.*, ¶ 14. On April 24, 2024, plaintiff, the Colorado State Patrol, Sergeant Spargur, and Trooper Howell, through counsel, entered into a tolling agreement (the "Tolling Agreement"). *Id.*, ¶ 15. The Tolling Agreement was drafted by counsel for plaintiff. *Id.* at 5, ¶ 20. The Tolling Agreement states: "This equitable tolling agreement is to run for the period between the date of this letter up to and including 30 days after any party gives written notice that the agreement is terminated." *Id.* at 4, ¶ 16; *see also* Docket No. 33-2 at 1.[2] Pursuant to the Tolling Agreement, Sergeant Spargur and Trooper Howell agreed to "voluntarily waive the defense of timeliness or statute of limitations if litigation is filed after April 26, 2024, but within the time period of tolling as described in this agreement." Docket No. 33 at 4, ¶ 17 (emphasis omitted).

---

[2] While the parties do not quote every part of the Tolling Agreement in their undisputed facts, they do reference the Tolling Agreement and do not dispute its authenticity. Thus, the Court treats the content of the Tolling Agreement as undisputed. Docket No. 33 at 4, ¶¶ 15-17; Docket No. 39 at 2, ¶¶ 15-17.

2

On October 31, 2024, Mr. Fairhurst informed Mr. Reynolds that his firm "decided to terminate our representation of you." Docket No. 33 at 5, ¶ 21.[3] Mr. Fairhurst told Mr. Reynolds that his firm was "no longer [Plaintiff's] counsel" and that his firm "will not be taking further action on your behalf." Docket No. 39 at 3, ¶ 2. Mr. Fairhurst further informed Mr. Reynolds that, once the Tolling Agreement was terminated, he would "only have 30 days to file suit before the statute of limitations passes." Docket No. 33 at 5, ¶ 22. On November 1, 2024, Mr. Fairhurst informed counsel for Sergeant Spargur and Trooper Howell that Mr. Reynolds terminated the Tolling Agreement. *Id.*, ¶ 23. On November 6, 2024, Mr. Reynolds informed counsel for Sergeant Spargur and Trooper Howell that he was no longer represented by Mr. Fairhurst's firm and would be proceeding pro se. *Id.*, ¶ 24. On November 26, 2024, Mr. Reynolds sent an e-mail to counsel for Sergeant Spargur and Trooper Howell, indicating his intent to terminate the Tolling Agreement. *Id.*, ¶ 25. On December 30, 2024, Mr. Reynolds filed a complaint in this action. *Id.*, ¶ 26. In the operative complaint, Mr. Reynolds asserts claims against Sergeant Spargur and Trooper Howell under 42 U.S.C. § 1983 for violation of the Fourth Amendment due to unlawful seizure and unconstitutional search and under Colo. Rev. Stat. § 13-21-131 for violation of Colo. Const. Art. II, Section 7 for unlawful seizure and unconstitutional search.[4] Docket No. 19 at 12-19, ¶¶ 50-109.

---

[3] The parties dispute whether this communication had the legal effect of terminating Mr. Fairhurst's representation of Mr. Reynolds. Docket No. 39 at 3, ¶ 1; Docket No. 41 at 3, ¶ 1.

[4] The operative complaint is the second amended complaint, filed on February 28, 2025. Docket No. 19.

## II. LEGAL STANDARD

Summary judgment is warranted under Federal Rule of Civil Procedure 56 when the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-50 (1986). "A defendant may use a motion for summary judgment to test an affirmative defense which entitles that party to a judgment as a matter of law." *Hutchinson v. Pfeil*, 105 F.3d 562, 564 (10th Cir. 1997). "[W]here a defending party pleads a statute of limitation and moves for summary judgment, and it appears that the action is barred by the appropriate statute of limitations and there is no genuine issue as to any material fact in connection with such statute, . . . then the motion for summary judgment should be granted." *Borum v. Coffeyville State Bank*, 6 F. App'x 709, 711 (10th Cir. 2001) (unpublished) (citation omitted). When reviewing a motion for summary judgment, a court must view the evidence in the light most favorable to the non-moving party. *Id.*

## III. ANALYSIS

Sergeant Spargur and Trooper Howell argue that Mr. Reynolds's claims are barred by the statute of limitations. Docket No. 33 at 6. Conversely, Mr. Reynolds argues that he timely filed his complaint within the statute of limitations. Docket No. 39 at 1-2.

### A. Statute of Limitations

The Court will first determine the applicable statute of limitations for Mr. Reynolds's claims. Mr. Reynolds's claims are brought under 42 U.S.C. § 1983 and Colo. Rev. Stat. § 13-21-131. Docket No. 19 at 12-19 , ¶¶ 50-109. Section 1983 does not have a statute of limitations. *See generally* 42 U.S.C. § 1983. To determine the

statute of limitations for § 1983 claims, courts reference analogous state statutes.  *See Hardin v. Straub*, 490 U.S. 536, 539 (1989) ("Limitations periods in § 1983 suits are to be determined by reference to the appropriate state statute of limitations.") (citations and quotations omitted); *see also Graham v. Taylor*, 640 F. App'x 766, 768 (10th Cir. 2016) (unpublished) ("The statute of limitations for § 1983 actions is borrowed from state statute.") (citing *Mondragón v. Thompson*, 519 F.3d 1078, 1082 (10th Cir. 2008)). Here, the appropriate state statute of limitations is determined by reference to § 13-21-131, which provides the closest state law parallel to the § 1983 claims.  *See Shash v City of Pueblo*, 770 F. Supp. 3d 1279, 1307 (D. Colo. 2025) (noting that § 13-21-131 is similar to § 1983).  A civil action filed pursuant to § 13-21-131 "must be commenced within two years after the cause of action accrues."  Colo. Rev. Stat. § 13-21-131(5). Section 1983 claims accrue when "facts that would support a cause of action are or should be apparent."  *Fratus v. DeLand*, 49 F.3d 673,675 (10th Cir. 1995) (citation omitted).  Here, Sergeant Spargur and Trooper Howell's allegedly unconstitutional search and seizure of Mr. Reynolds's motorcycle occurred on April 29, 2022.  Docket No. 33 at 6.  Sergeant Spargur and Trooper Howell allegedly performed a second unconstitutional search on April 30, 2022.  *Id.*  Thus, Mr. Reynolds's claims accrued on April 29 and 30, 2022.   Accordingly, the applicable statute of limitations for Mr. Reynolds's claims would be two years, and would have expired on April 29 and 30, 2024.[5]  The parties entered the Tolling Agreement on April 24, 2024, *id.* at 4, ¶ 15, five days before the statute of limitations would have expired on the claims which accrued

---

[5] The parties do not dispute that the statute of limitations for Mr. Reynolds's claims would have expired on these dates absent the Tolling Agreement.  Docket No. 33 at 6-7; Docket No. 39 at 4.

on April 29, 2022 and six days before the statute of limitations would have expired on the claims which accrued on April 30, 2022.

Mr. Reynolds and defendants interpret the Tolling Agreement differently. Defendants argue that the Tolling Agreement required Mr. Reynolds to file any claims within 30 days of any party terminating the agreement. Docket No. 33 at 8. Defendants claim that Mr. Fairhurst terminated the Tolling Agreement on behalf of Mr. Reynolds through his November 1, 2024 email. *Id.* According to defendants, Mr. Reynolds filed his complaint on December 30, 2024, more than 30 days after Mr. Reynolds terminated the Tolling Agreement, and his claims are thus barred. *Id.* at 8-9. Alternatively, defendants argue that, even if Mr. Fairhurst's email did not terminate the Tolling Agreement, Mr. Reynolds terminated the agreement through his November 26, 2024 email. *Id.* at 9. Thus, because this email was sent more than 30 days before the complaint was filed, defendants maintain that Mr. Reynolds's claims are barred. *Id.*

Mr. Reynolds has a different interpretation of the Tolling Agreement. He contends that the Tolling Agreement suspended the statute of limitations until 30 days after the agreement's termination. Docket No. 39 at 5. Because there were five days remaining on the statute of limitations period at the time the parties entered into the Tolling Agreement, Mr. Reynolds claims that he had 35 days to file his complaint after he terminated the agreement. *Id.*

B. **Mr. Fairhurst's Authority to Terminate the Tolling Agreement**

Mr. Fairhurst purported to terminate the Tolling Agreement on November 1, 2024, the day after he told Mr. Reynolds that he had terminated his representation of Mr. Reynolds. Docket No. 33 at 5, ¶¶ 21, 23. Defendants claim that Mr. Fairhurst's

6

termination of the Tolling Agreement was effective, despite Mr. Fairhurst's purported termination of the attorney-client relationship. *Id.* at 8. An attorney's authority to act on behalf of a client, however, ends when the attorney-client relationship is terminated. *See Maples v. Thomas*, 565 U.S. 266, 281 (2012) ("Having severed the principal-agent relationship, an attorney no longer acts . . . as the client's representative."). Courts have held that an attorney-client relationship is terminated when an attorney clearly communicates the termination to his client. *See People v. Heaphy*, 470 P.3d 728, 734, 738 (Colo. O.P.D.J. 2015) (finding that an attorney terminated representation of his client when he sent an email explaining that he could longer assist his client and that he was terminating representation); *Brautigam v. Damon*, 697 F. App'x 844, 847 (6th Cir. 2017) (unpublished) ("The attorney-client relationship is terminated when there is an affirmative act by either party signaling the end of the relationship."); *Hartleib v. Weiser L. Firm, P.C.*, 2019 WL 3943064, at *7 (D. Kan. Aug. 21, 2019) ("best practices generally recommend the clear and unambiguous communication of termination of the attorney-client relationship."); *Quinones v. Miller*, 2003 WL 21276429, at *29 n.49 (S.D.N.Y. June 3, 2003) ("the [attorney-client] relationship can be terminated by the express statement of . . . the attorney.") (citing *SWS Fin. Fund A v. Salomon Bros. Inc.*, 790 F. Supp. 1292, 1398-99 (N.D. Ill. 1992)). The Court similarly finds that, here, Mr. Fairhurst terminated the attorney-client relationship by informing Mr. Reynolds that his firm "decided to terminate our representation of you." Docket No. 33 at 5, ¶ 21. Having terminated his representation of Mr. Reynolds on October 31, 2024, Mr. Fairhurst did not have the authority to bind Mr. Reynolds through his purported termination of the

7

Tolling Agreement on November 1, 2024. Accordingly, the Tolling Agreement was not terminated by Mr. Fairhurst.[6]

### C. Interpretation of the Tolling Agreement

Because Mr. Fairhurst could not terminate the Tolling Agreement, the parties agree that Mr. Reynolds terminated the Tolling Agreement on November 26, 2024. *Id.* at 9; Docket No. 39 at 5. Thus, the question is how the Tolling Agreement should be interpreted. Under Mr. Reynolds's interpretation, the Tolling Agreement suspended the statute of limitations, thereby preserving the five days left in the two-year period, meaning that Mr. Reynolds had 35 days after November 26, 2024, i.e., until December 31, 2024, to file a complaint. Docket No. 39 at 5. Under defendants' interpretation, the statutory period continued to run during the tolling period, giving Mr. Reynolds only 30 days to file a complaint after the November 26, 2024 termination, i.e., until December 26, 2024. Docket No. 33 at 8.

The Tolling Agreement is a contract and must be interpreted according to the principles of contract law. Notably, "state law governs contract interpretation." *Rifle Onion Co., LLC v. Hellman*, No. 20-cv-03514-DDD-KAS, 2025 WL 446135, at *4 (D. Colo. Feb. 10, 2025) (citing *Flood v. ClearOne Commc'ns, Inc.*, 618 F.3d 1110, 1117 (10th Cir 2010)). "Because the parties' arguments assume that Colorado law applies, [the Court] will proceed under the same assumption." *Grynberg v. Total S.A.*, 538 F.3d 1336, 1346 (10th Cir. 2008) (citation omitted). Thus, the Court will apply Colorado's

---

[6] Defendants argue that Mr. Reynolds might have solicited Mr. Fairhurst to send the November 1, 2024 email purporting to terminate the Tolling Agreement. Docket No. 41 at 3. This is mere speculation, which cannot create a genuine issue of material fact. *See Conaway v. Smith*, 853 F.2d 789, 794 (10th Cir. 1988).

8

contract-interpretation principles. "Under Colorado law, 'a contract must be construed to ascertain and effectuate the intent of the parties as determined primarily from the language of the contract.'" *Gol TV, Inc. v. EchoStar Satellite Corp.*, 692 F.3d 1052, 1055 (10th Cir. 2012) (quoting *East Ride of Fort Collins, LLC v. Larimer & Weld Irrigation Co.*, 109 P.3d 969, 974 (Colo. 2005)). "'To determine the intent of the parties, the court should give effect to the plain and generally accepted meaning of the contractual language." *Id.* (quoting *Copper Mountain, Inc. v. Indus. Sys., Inc.*, 208 P.3d 692, 697 (Colo. 2009)). "When determining the plain and ordinary meaning of words, [courts] may consider definitions in a recognized dictionary." *Owners Ins. Co. v. Dakota Station II Condo. Ass'n, Inc.*, 443 P.3d 47, 51 (Colo. 2019) (quoting *Renfandt v. N.Y. Life Ins. Co.*, 419 P.3d 576, 580 (Colo. 2018)). Extrinsic evidence regarding a contract's meaning is not considered unless the terms are ambiguous. *Ad Two, Inc. v. City and Cnty. Of Denver ex rel. Manager of Aviation*, 9 P.3d 373, 376-77 (Colo. 2000) ("Absent such ambiguity, we will not look beyond the four corners of the agreement to determine the meaning intended by the parties.").

The Tolling Agreement states that it is "an agreement . . . to toll all applicable statutes of limitations related to any claims Mr. Reynolds may file in federal or state court against . . . Bradley Spargur and/or Robert Howell." Docket No. 33-2 at 1. "The tolling of a statute of limitations will . . . suspend the running of the limitations period." *Morrison v. Goff*, 91 P.3d 1050, 1053 (Colo. 2004) (citations omitted). Black's Law Dictionary defines "toll" as "([o]f a time period, esp. a statutory one) to stop the running of." TOLL, Black's Law Dictionary (12th ed. 2024). Thus, as a general matter, the purpose of the Tolling Agreement would seem to be the suspension of the running of

9

the statute of limitations. Some language in the Tolling Agreement is consistent with this purpose, other language is not.

The Tolling Agreement states that: "This equitable tolling agreement is to run for the period between the date of this letter [April 24, 2024] up to and including 30 days after any party gives written notice that the agreement is terminated." Docket No. 33-2 at 1. The term "to run for" is best understood in context as meaning "to continue in force, operation, or production." *See Merriam Webster Online*, https://www.merriam-webster.com/dictionary/runs (last visited Dec 31, 2025). Thus, this sentence indicates that the Tolling Agreement continues in operation between April 24, 2024 and up to and including 30 days after any party gives written notice that the agreement is terminated; here, December 26, 2024. The language suggests that, because the statute of limitations was suspended five days before its date of expiration, Mr. Reynolds had up to and including December 31, 2024 to file a complaint regarding the April 29, 2022 search claims and up to and including January 1, 2025 to file a complaint for the claims regarding the April 30, 2022 search.

However, another sentence in the Agreement suggests that the parties did not contemplate tolling beginning on April 24, 2024. Although the Tolling Agreement is dated and signed on April 24, 2024, it states that defendants "agreed to voluntarily waive the defense of timeliness or statute of limitations if litigation is filed after April 26, 2024, but within the time period of tolling as described in this agreement."[7] Docket No.

---

[7] It is likely that the parties meant to write April 29, 2024, which is the date the statute of limitations would have expired absent a tolling agreement, rather than April 26, 2024, which is a date that has no apparent significance. This explanation is consistent with Mr. Fairhurst's warning to Mr. Reynolds that 30 days was left after termination. However, whether the statute of limitations was suspended April 26, 2024

10

33 at 4, ¶ 17 (internal quotations and emphasis omitted).  This sentence indicates that defendants waive the statute of limitations defense only if litigation is filed after April 26, 2024, but within the time period of tolling described in the agreement.  The "time period of tolling as described in this agreement" is best understood as 30 days after the agreement is terminated since time left in the statutory period is not "described" in the agreement.  Thus, this language suggests that, because Mr. Reynolds filed his complaint on December 30, 2024, which is more than 30 days after terminating the Tolling Agreement on November 26, 2024, his complaint was untimely.

        The Court finds that the sentences the Court just analyzed are inconsistent with each other and create an ambiguity.  The first sentence says that the Agreement "is to run for the period between the date of this letter up to and including 30 days after any party" terminates it, whereas the second sentence conditions the defendants' waiver of the statute of limitations defense on litigation being filed "after April 26, 2024, but within the time period of tolling as described in this agreement."  Docket No. 33-2 at 1.  Thus, one sentence suggests the tolling of five days remaining in the limitations period  and the other contemplates, at best, the tolling of three days remaining or, at worst, no tolling of the remaining three days, but only having 30 days after one party terminates the Tolling Agreement to file suit.

---

or April 29, 2024 is irrelevant.  If the statutory period was tolled beginning on April 26, 2024, three days would be left.  Mr. Reynolds' December 30, 2024 complaint—filed four days after the 30-day post-termination period expired—would be untimely.  If the statutory period was tolled beginning on April 29, 2024, the statute of limitations would have expired, giving Mr. Reynolds exactly thirty days to file the complaint after the Tolling Agreement was terminated.

Because the Tolling Agreement is ambiguous, the Court can look to extrinsic evidence to help determine the Tolling Agreement's meaning. *Ad Two*, 9 P.3d at 376-77. It is undisputed that Mr. Fairhurst informed Mr. Reynolds on October 31, 2024 that, once a party terminated the Tolling Agreement, "you will only have 30 days to file suit before the statute of limitations passes." Docket No. 33 at 5, ¶ 22. Mr. Fairhurst drafted the Tolling Agreement, and he is in the best position to know what it means. Although Mr. Fairhurst's warning to Mr. Reynolds about having only 30 days after termination to file suit does not explain the discrepancy between one sentence referring to April 24 and the other referring to April 26, it does clarify that "the time period of tolling described in this agreement" is 30 days after termination, rather than thirty days plus whatever time remained in the two-year limitations period. Thus, the Court finds that Mr. Fairhurst's understanding of the Tolling Agreement that the statute of limitations expires 30 days after a party terminates the Tolling Agreement is the proper interpretation. Accordingly, the Court concludes that Mr. Reynolds's claims are barred by the statute of limitations and that defendants are entitled to summary judgment. Moreover, because plaintiff's claims are barred by the statute of limitations, the Court will dismiss his claims with prejudice.

## IV. CONCLUSION

It is therefore

**ORDERED** that Defendants' Motion for Summary Judgment [Docket No. 33] is **GRANTED**. It is further

**ORDERED** that each of plaintiff's claims is **DISMISSED** with prejudice. It is further

**ORDERED** that this case is closed.

DATED January 5, 2026.

BY THE COURT:

_____
PHILIP A. BRIMMER
Chief United States District Judge
